FILED
2016 APR 29 A 9:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ROGER SHULER, CAROL SHULER )<br>   Plaintiffs )<br>   Pro Se )<br>v. ) | CIVIL ACTION NO.<br>CV-16-TMP-0695-S |
| JESSICA MEDEIROS GARRISON; LUTHER )<br>STRANGE, individually and in his official capacity )<br>as Alabama attorney general; BILL BAXLEY; )<br>LIBERTY DUKE; CHRISTINA CROW; )<br>JPMORGAN CHASE BANK; ROBERT WERMUTH; )<br>STEPHENS MILLIRONS law firm; SPARTAN )<br>VALUE INVESTORS; CLAYTON MOBLEY; )<br>LINDSAY JACKSON; JAG INVESTMENT )<br>STRATEGIES; JOHN WILLIAMS; NOWLIN & )<br>ASSOCIATES; CHARLES NOWLIN; JUSTIN )<br>CRAFT; PRESTON CRIDER; ANGELA )<br>GULLEDGE CRIDER; MARIE CLAIRE; )<br>LIZ WELCH; JAMES J. ODOM JR.; ROB RILEY; )<br>BIRMINGHAM WATER WORKS; JOEL )<br>DILLARD; YELLOWHAMMER NEWS; CLIFF )<br>SIMS; AL.COM; LEADA GORE )<br>        ) <br>   **Defendants** | JURY DEMAND<br><br>VERIFIED COMPLAINT |

## INTRODUCTION

1. Plaintiffs Roger Shuler and Carol Shuler ("Shulers") bring this action for declaratory

   judgment, equitable relief, and money damages, instituted to secure the protection of and

   to redress unlawful actions against the plaintiffs. The suit is brought to secure the

   protection of and to redress the deprivation of rights secured by Title VII of the Civil

   Rights Act of 1964, as amended, the First Amendment through 42 U.S. Code 1983; the

   Fourth Amendment through 42 U.S. Code 1983, the Fourteenth Amendment through 42

U.S. Code 1983, and the laws of the State of Alabama. The plaintiffs seek compensatory and punitive damages and request a jury trial.

## JURISDICTION AND VENUE

2. The unlawful actions alleged herein below were committed by the defendants within Shelby County and Jefferson County, Alabama. Plaintiffs were residents of Shelby County, Alabama, at the time of these unlawful actions. Jurisdiction in this Court is conferred by 28 USC 1331, 1332 (diversity jurisdiction), and e1343.

## PARTIES

3. Roger Shuler and Carol Shuler ("Shulers") currently reside in Springfield, Missouri, but resided in Shelby County, Alabama, and were owners of property at 5204 Logan Drive, their primary residence, at the time of events described in this complaint.

4. Defendant Jessica Medeiros Garrison is an attorney licensed to practice law in Alabama, with the Balch & Bingham law firm of Birmingham, Alabama.

5. Defendant Luther Strange is attorney general of Alabama. Defendant Strange is a state actor for purposes of 42 U.S. Code 1983. Defendant Strange is sued individually pursuant to 1983 for violations of the First, Fourth, and Fourteenth Amendments as further set out herein.

6. Defendant Bill Baxley is an attorney licensed to practice law in Alabama, with the Baxley Dillard McKnight James & McElroy firm in Birmingham.

7. Defendant Liberty Duke is a registered lobbyist in Alabama, and based on information and belief, resides in Union Springs, Alabama.

8. Defendant Christina Crow is an attorney licensed to practice law in Alabama, with the Jinks Crow & Dickson law firm in Union Springs, Alabama.

9. Defendant JPMorgan Chase Bank is an international financial institution, based in New York, NY.

10. Defendant Robert Wermuth is an attorney licensed to practice law in Alabama, with the Stephens Millirons law firm in Huntsville, Alabama.

11. Defendant Stephens Millirons is a law firm in Huntsville, Alabama.

12. Defendant Spartan Value Investors is a real-estate investment firm, based in Birmingham, Alabama.

13. Defendant Clayton Mobley is founder and CEO of Spartan Value Investors.

14. Defendant Lindsay Jackson is property manager for Spartan Value Investors.

15. Defendant JAG Investment Strategies is a real-estate investment firm, based in Birmingham, Alabama.

16. Defendant John Williams is president of JAG Investment Strategies.

17. Defendant Nowlin & Associates is a wealth-management company, based in Birmingham, Alabama.

18. Defendant Charles Nowlin is founder and managing director of Nowlin & Associaes.

19. Defendant Justin Craft is senior vice president of Nowlin & Associates.

20. Defendants Preston Crider and Angela Gulledge Crider are the current occupants of the Shulers' former home at 5204 Logan Drive, in Birmingham, Alabama.

21. Defendant *Marie Claire* is an international magazine for women, published in France, with U.S. publication by Hearst Corporation in New York, N.Y.

22. Defendant Hearst Corporation is an international publishing company based in New York, N.Y.

23. Defendant Liz Welch is a writer for *Marie Claire*.

24. Defendant James J. Odom is an attorney and auctioneer, licensed to practice law in Alabama.

25. Defendant Rob Riley is an attorney, licensed to practice law in Alabama.

26. Defendant Birmingham Water Works is a utility company, providing water for the Birmingham, Alabama, area.

27. Defendant Joel Dillard is an attorney, licensed to practice law in Alabama.

28. Defendant *Yellowhammer News* is a political Web site, based in Birmingham, Alabama.

29. Defendant Cliff Sims is publisher of *Yellowhammer News*.

30. Defendant *al.com* is the largest news organization in Alabama, with newspapers and digital outlets in Birmingham, Huntsville, and Mobile.

31. Defendant Leada Gore is a reporter for *al.com*.

## FACTUAL ALLEGATIONS

32. In March 1990, the Shulers purchased the property at 5204 Logan Drive in Birmingham, executing a mortgage with Troy Nichols. The Shulers refinanced with Troy Nichols in 1993. They later received notice that their mortgage was held by Chase Mortgage, a subsidiary of JPMorgan Chase Bank.

33. In May 2008, powerful political forces connected to then Gov. Bob Riley cheated Roger Shuler out of his job as an editor at the University of Alabama at Birmingham (UAB), where he had worked for 20 years. Shuler became unemployed because his personal blog,

*Legal Schnauzer*, wrote forcefully and accurately about corruption in Alabama state and federal courts. Audiotaped evidence proves Shuler was "fired" because of his coverage about the unlawful political prosecution of former Gov. Don Siegelman, who was Bob Riley's chief political opponent.

34. For good measure, the same political forces cheated Carol Shuler out of her job in 2009 at Infinity Insurance Co., which includes at least one major Riley ally (Drayton Nabers) on the board of directors.

35. The Shulers filed federal employment-discrimination/retaliation lawsuits, but both were dismissed at summary judgment in flagrantly unlawful rulings by U.S. judges William Acker Jr. and Abdul Kallon, respectively. Roger Shuler was allowed to conduct no discovery in his case, Carol Shuler never received adequate responses to key discovery requests in her case, and the court never compelled Infinity to engage properly in discovery.

36. From 1990 to 2012, roughly 23 years, the Shulers always timely made their mortgage payments. But the impact of unemployment and court-related cheat jobs caused them to start falling behind on their mortgage.

37. The Shulers received a forbearance from Chase, and were in the process of starting to catch up on their mortgage payments, when Rob Riley and Liberty Duke filed a defamation lawsuit against both Shulers (even though Carol had nothing to do with *Legal Schnauzer* or the blog posts in question at the time). Roger Shuler had reported that Riley and Duke had engaged in an extramarital affair, and their lawsuit claimed Shuler's reporting was false and defamatory.

38. At about the same time, Jessica Medeiros Garrison (like Riley, a Republican political operative and ally of U.S. Circuit Judge William Pryor) filed a defamation lawsuit against Roger Shuler, claiming his reports about her extramarital affair with Attorney General Luther Strange were false and defamatory.

39. Riley and Duke sought a preliminary injunction against both Shulers, even though more than 200 years of First Amendment law have forbidden such prior restraints. Riley and Duke sought a contempt order and incarceration of both Shulers—neither action had any basis in the law—when the Shulers failed to appear at a hearing. The Shulers did not appear because they had not been lawfully served and challenged service via a Motion to Quash, which the court never heard. An attorney's review of the sealed record later showed that no summons had been issued at the time of the hearing, meaning the Shulers had multiple grounds for not appearing in court—No. 1 being that they had not been summoned.

40. The Shulers were waiting for a ruling on their Motion to Quash when Shelby County deputies entered their basement garage on Oct. 23, 2013, beat up Roger Shuler, doused him with pepper spray, and took him to the Shelby County Jail for a stay of more than five months. Roger Shuler became the only journalist in the Western Hemisphere to be incarcerated in 2013, the first in the United States since 2006, and apparently the only journalist in U.S. history to be incarcerated because of a contempt order related to an unlawful preliminary injunction in a defamation case.

41. Roger Shuler's arrest was not connected to just the Riley/Duke case. On Oct. 22, 2013, Shuler wrote a post about an apparent sweetheart deal Garrison received on a $400,000 home in Mountain Brook, after she had been forced to give up her job in AG Luther

Strange's office after her ex-husband filed a complaint related to child custody. One day after the report about the Garrison house deal, and its ties to Luther Strange, Roger Shuler was beaten inside his own home and arrested—all with deputies showing no warrant, never stating they had a warrant, and not even stating their reasons for being on the premises. Given that no warrant ever has been produced, it appears Roger Shuler was the victim of a state-sanctioned kidnapping—coordinated by Garrison, Strange, Riley, Duke, and perhaps others.

42. With Roger Shuler in jail and Carol Shuler afraid to leave the house for fear of being arrested, the Shulers had no chance to address issues related to their mortgage. Despite that, Chase provided no notice that the forbearance was going to be brought to a close.

43. While in jail, Roger Shuler attended two hearings in the Garrison lawsuit, but he was shackled at the wrists and ankles and essentially was unable to defend himself.

44. In March 2014, just as Roger Shuler was about to be released from jail, the Shulers received notice from attorney Robert Wermuth, of the Stephens Millirons law firm in Huntsville, that Chase was foreclosing on the Shuler's home of almost 25 years.

45. On March 26, 2014, Roger Shuler was released from jail—and he immediately had to work frantically with his wife in an effort to save their house. Alabama law holds that homeowners under threat of foreclosure must have at least 30 days to seek a solution—and because of Roger Shuler's incarceration—the Shulers did not even have that much time. After five months in jail, Roger Shuler was suffering from a number of physical (loss of 25 pounds, dehydration) and psychological (PTSD) issues and was unable to address the complex issues associated with foreclosure.

46. The Shulers were unable to obtain the financial or legal resources to save their home in such a short time. On April 29, 2014, their home was auctioned on the steps of the Shelby County Courthouse.

47. Attorney Robert Wermuth and the Stephens Millirons law firm of Huntsville conducted the foreclosure process. But they provided the Shulers with no information once the sale was completed. The Shulers did not even receive a copy of the foreclosure deed.

48. A company called Spartan Value Investors, led by CEO Clayton Mobley and property manager Linday Jackson, left a notice on the Shulers' door that they had purchased the property. Attorney and auctioneer James J. Odom conducted the actual sale.

49. The Shulers received notice from Alabama Power and Birmingham Water Works that their accounts had been placed in Spartan's name. At one point, Spartan unlawfully had the water to the Shulers' home shut off.

50. The Shulers, in July 2014, were forced to move to Springfield, Missouri (where Roger Shuler grew up), and they wound up losing almost all of their possessions—either during the move under traumatic conditions or during an unlawful eviction in Missouri.

51. After moving out of state and with his home torn asunder, Roger Shuler had no way to defend the Garrison case or even appear—even though he had made multiple appearances while in jail. During one of those appearances, Shuler inexplicably spent a week at the Jefferson County Jail, which deservedly has been the subject of litigation regarding its inhumane conditions for prisoners.

52. With Shuler unable to defend himself, and even though he received no notice of a default hearing, Garrison was awarded a $3.5-million default judgment that has no basis in fact or law. In both the Riley/Duke and Garrison/Strange cases, there was no jury trial as

required by First Amendment law (in fact, there was no trial at all in either case), meaning Shuler's reporting was not false or defamatory, as a matter of law.

53. Who benefited most from the foreclosure on the Shulers' home? The top two answers would be Jessica Garrison and Luther Strange. They were able to conclude Garrison's dubious lawsuit, and even get a favorable ruling, without ever having to face discovery or adversarial questioning of any kind. Jessica Garrison, which inexplicably has been sealed from public view, has remained unsealed. It would have been a key piece of evidence had Roger Shuler not gone through a foreclosure and been able to defend himself.

54. According to press reports, Jessica Garrison committed perjury during a hearing on her lawsuit. It's unclear if Luther Strange also lied under oath, but press reports make that appear likely.

55. Garrison and Strange engaged in a conspiracy to cheat the Shulers out of their home. Among those aiding in the effort were Garrison attorney Bill Baxley, Rob Riley, Robert Wermuth and the Stephens Millirons law firm, unknown officials from JPMorgan Chase Bank, Liberty Duke and attorney Christina Crow, and probably others who are unknown at this time.

56. Garrison and Strange hardly were the only ones to benefit from the Shulers' foreclosure. Mere days after the Shulers moved out, Spartan Value Investors "flipped" the property to another real-estate investment outfit, called JAG Investment Strategies, led by a man named John Williams. JAG obtained a loan from Nowlin & Associates, led by Charles Nowlin and Justin Craft, apparently to renovate and market the Shulers' home. Public records show that Preston and Angela Gulledge Crider, a married couple, bought the

property at a price well below what it would have brought on the regular market. The Shulers? They were out a home in which they had invested 25 years of their lives.

57. A friend helped the Shulers obtain a copy of the foreclosure deed, which showed the house drew a price about $9,000 above the amount owed on the mortgage. That amount, therefore, was the Shuler's equity, and it was due to be paid to them. But Wermuth and Stephens Millirons never fulfilled their duties to disburse the funds to the Shulers. Instead, Roger Shuler had to contact the firm, only to be told that the money had been sent to Liberty Duke, as an alleged creditor in the Riley/Duke lawsuit. There never was a trial or final judgment in the Riley/Duke case, so Liberty Duke could not possibly have any lawful claim to the Shulers' equity funds. She basically stole almost $9,000 from the Shulers, apparently with the help of lawyers Rob Riley and Christina Crow.

58. In April 2015, Garrison was granted a $3.5-million default judgment against Roger Shuler. Public records show that Shuler neither received nor was sent notice of the default-judgment hearing, so the judgment is void as a matter of law. Garrison attorney Joel Dillard told the press: "She is the righteous, kind, gracious working mother of a young son she adores, and this fact magnified the outrageous wrong. Shuler's statements about her were not just libelous, they were plucked from thin air, and were cyber-bullying of the worst order."

59. In October 15, 2015, Garrison was the subject of an "as-told-to" story about her $3.5-million default judgment against Roger Shuler, in *Marie Claire,* an international women's magazine and Web site that is published in the United States by Hearst Corporation. Title of the article, written by Liz Welch, is "A blogger claimed I had an affair with my boss, and I sued him for $3.5 million." In the story, Garrison falsely

intimates that I was stalking her. She falsely claims I wrote that Luther Strange was the father of her son. She falsely claims there was a trial in the defamation case.

60. *Yellowhammer News,* a conservative political Web site run by publisher Cliff Sims, picked up the *Marie Claire (MC)* article and ran it verbatim. *Al.com* reporter Leada Gore picked up on the *MC* article and repeated a number of Garrison's false statements, including the claim that I had reported her son was Luther Strange's child. Gore and *al.com* also provided a link to the full *MC* article.

# CAUSES OF ACTION

# COUNT ONE

# VIOLATION OF FIRST AMENDMENT

# (ASSERTED VIA 42 U.S. CODE 1983)

# (GARRISON, STRANGE, BAXLEY, DUKE, CROW, RILEY)

61. Plaintiffs re-allege paragraphs 1-60 above, as if set out in full herein. The above-named defendants, acting under color of state law or in conjunction with state actors, knowingly and maliciously took steps to retaliate against the Shulers for Roger Shuler's reporting and to stop future reporting.

62. These steps included seeking Roger Shuler's unlawful arrest and initiating a wrongful foreclosure that caused the Shulers to lose their home of 25 years.

63. As a result of defendants' unlawful actions, the Shuler have suffered, and continue to suffer from, devastating financial, emotional, and physical damages.

## COUNT TWO

## VIOLATION OF FOURTH AMENDMENT

## (ASSERTED VIA 42 U.S. CODE 1983)

## (GARRISON, STRANGE, BAXLEY, DUKE, CROW, RILEY)

64. Plaintiffs re-allege paragraphs 1-60 above, as if set out in full herein. The above-named defendants, acting under color of state law or in conjunction with state actors, subjected the Shulers to unlawful seizures, in violation of the Fourth Amendment.

65. Defendants' actions caused the Shulers' real and personal property to be unlawfully seized.

66. As a result of these unlawful actions, the Shulers have lost almost everything they ever owned—their home, money, furnishings, appliances, clothing, personal effects, and more. Defendants' actions caused the Shulers to suffer devastating financial, emotional and physical damages.

## COUNT THREE

## VIOLATION OF FOURTEENTH AMENDMENT

## (ASSERTED VIA 42 U.S. CODE 1983)

## (GARRISON, STRANGE, BAXLEY, DUKE, CROW, RILEY

67. Plaintiffs re-allege paragraphs 1-60 above, as if set out in full herein. The above-named defendants took steps to ensure that the Shulers' rights to due process and equal protection would be trampled, in violation of the Fourteenth Amendment.

68. As a result of these unlawful actions, the Shulers continue to suffer significant financial emotional, and physical damages.

## COUNT FOUR

## WRONGFUL FORECLOSURE

## (ASSERTED VIA ALABAMA STATE LAW)

## (ALL DEFENDANTS, EXCEPT MARIE CLAIRE, LIZ WELCH, YELLOWHAMMER NEWS, CLIFF SIMS, AL.COM, LEADA GORE)

69. Plaintiffs re-allege paragraphs 1-60 above, as if set out in full herein. The only lawful grounds for a foreclosure is to collect a debt. The above-named Defendants took actions to foreclose on the Shulers' home for unlawful reasons.

70. Defendants took these actions for an ulterior purpose—to turn the Shulers' lives upside down in retaliation for Roger Shuler's accurate reporting on matters of public interest. Specifically, defendants' actions forced the Shulers to move out of Alabama, which defendants hoped would cause reporting at *Legal Schnauzer* to cease.

71. Defendants had the goal of oppressing the Shulers and furthering the interests of multiple third parties. Such improper use of the mortgage process is considered a fraud under the law.

72. Defendants' actions cause the Shulers to lose a home they had owned, maintained, and treasured for 25 years. They caused the Shulers to lose the equity in their home, causing them in their mid to late 50s to have to start all over financially. They caused loss of so many personal belongings that, at this point, Roger Shuler does not have a single pair of pants to wear, no collared shirts, no shoes (other than worn out tennis shoes). They caused loss of personal effects that simply cannot be replaced. The financial, emotional, and physical damages to the Shulers are almost incalculable.

## COUNT FIVE

## CONVERSION

## (ASSERTED VIA ALABAMA STATE LAW)

## (ALL DEFENDANTS, EXCEPT MARIE CLAIRE, LIZ WELCH, YELLOWHAMMER NEWS, CLIFF SIMS, AL.COM, LEADA GORE)

73. Plaintiffs re-allege paragraphs 1-60 above, as if set out in full herein. The above-named defendants participated in a scheme to take the Shulers' real and personal property and convert it to their own use or purposes.

74. These actions cost the Shulers' their home, almost all of its contents, to the point that the Shulers now live in a "fleabag motel," where they struggle to survive from week to week.

75. These actions caused the Shulers to suffer ongoing financial, emotional, and physical damages that could aptly be described as "catastrophic."

## COUNT SIX

## (TORTIOUS INTERFERENCE)

## (ASSERTED VIA ALABAMA STATE LAW)

## (ALL DEFENDANTS, EXCEPT MARIE CLAIRE, LIZ WELCH, YELLOWHAMMER NEWS, CLIFF SIMS, AL.COM, LEADA GORE)

76. Plaintiffs re-allege paragraphs 1-60 above, as if fully set out herein. At all material times, the Shulers had a property interest in their home and its contents and a business relationship with their mortgage company. The above-named defendants knew of this property interest and business relationship.

77. Defendants interfered with the Shulers' interests and relationships by causing a foreclosure to be launched for purposes that had nothing to do with collection of a debt. It had everything to do with causing the Shulers to lose their home and much of its contents, with the hopes it would bring an end to Roger Shuler's investigative journalism via *Legal Schnauzer*.

78. There was no justification for said interference, and as a result of it, the Shulers suffered devastating financial, emotional, and physical damages.

## COUNT SEVEN

## DEFAMATION

## (ASSERTED VIA ALABAMA STATE LAW)

## (GARRISON, BAXLEY, DILLARD, MARIE CLAIRE, LIZ WELCH, YELLOWHAMMER NEWS, CLIFF SIMS, AL.COM, LEADA GORE)

Case 2:16-cv-00695-TMP   Document 1   Filed 04/29/16   Page 16 of 19

79. Plaintiffs re-allege paragraphs 1-60 above, as if set out in full herein. The above-named defendants caused false statements to be published about Roger and Carol Shuler, causing damage to their reputations.

80. Defendants maliciously and willfully caused defamatory statements to be published about Roger and Carol Shuler.

81. As a result of defendants' unlawful actions, the Shulers have suffered mental anguish, as well as impairment of reputation and standing in the community, and personal humiliation.

82. Defendants acted with malice, knowing the statements in question were false, and this entitles the Shulers to punitive damages for the pain and suffering they have experienced due to the publication of defamatory material about them.

## COUNT EIGHT

## INVASION OF PRIVACY

## (ASSERTED VIA ALABAMA STATE LAW)

## (ALL DEFENDANTS, EXCEPT MARIE CLAIRE, LIZ WELCH, YELLOWHAMMER NEWS, CLIFF SIMS, AL.COM, LEADA GORE)

83. Plaintiffs re-allege paragraphs 1-60, as if set out in full herein. The above-named defendants caused numerous intrusions on the Shulers' physical solitude or seclusion.

84. These actions constitute invasion of privacy under Alabama state law and caused the Shulers to suffer physical, emotional, and financial damages.

85. These actions caused a nearly constant stream of strangers to come on the Shulers' property, banging on the door, shining lights in the windows. The Shulers felt like prisoners in their own home.

## COUNT NINE

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## (ASSERTED VIA ALABAMA STATE LAW)

## (ALL DEFENDANTS, EXCEPT MARIE CLAIRE, LIZ WELCH, YELLOWHAMMER NEWS, CLIFF SIMS, AL.COM, LEADA GORE)

86. Plaintiffs re-allege paragraphs 1-60, as if set out fully herein. The above-named defendants' conduct was intentional and reckless and caused both Roger and Carol Shuler extraordinary emotional distress, to the point that they no longer feel safe inside their own home or when they simply are running errands in their vehicle. The Shulers continue to experience physical, emotional, and financial damages.

## COUNT TEN

## CIVIL CONSPIRACY

## (ASSERTED VIA 42 U.S. CODE 1983)

## (ALL DEFENDANTS, EXCEPT MARIE CLAIRE, LIZ WELCH, YELLOWHAMMER NEWS, CLIFF SIMS, AL.COM, LEADA GORE

87. Plaintiffs re-allege paragraphs 1-60 as if set out fully herein. The above-named defendants, and possibly others, reached an agreement to accomplish an unlawful purpose, to punish Roger Shuler for practicing journalism and Carol Shuler for being

married to a journalist, by causing the Shulers' home to go through an unlawful foreclosre. This conspiracy has heaped enormous financial, physical, and emotional harm upon the Shulers.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Roger and Carol Shuler request of this Court the following monetary and equitable relief against defendants:

A. A declaratory judgment holding that actions of the Defendants described herein violated the Plaintiffs' rights as secured by the First, Fourth, and Fourteenth Amendments to the Constitution of the United States and by Alabama state law.

B. A permanent injunction enjoining the Defendants, their agents, successors, employees, attorneys, and those acting in concert with the defendants at the defendants' request from continuing to violate the Shulers' constitutional rights.

C. An order of compensatory and punitive damages.

D. An order to make the Shulers whole by restoring the Shulers' ownership rights to the property that was unlawfully taken from them—and by returning the equity funds, wrongfully disbursed to Liberty Duke, to the Shulers.

E. Such other legal and equitable relief as this Court may deem necessary or proper.

Respectfully submitted, this __28th__ day of __April__, 2016.

_Roger Shuler_
Roger Shuler, Pro Se

_Carol Shuler_
Carol Shuler, Pro Se

**PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE BY**

**A JURY UNDER FEDERAL LAW**

Roger and Carol Shuler
3501 W. Sunshine
Springfield, MO 65807

### STATEMENT OF VERIFICATION

I have read the above complaint and it is correct to the best of my knowledge.

_Roger Shuler_
Roger Shuler, Pro Se

_Carol Shuler_
Carol Shuler, Pro Se