## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ROGER SHULER, et al., | } | |
| | } | |
| Plaintiffs, | } | |
| | } | |
| v. | } | Case No.:  2:16-CV-695-RDP |
| | } | |
| JESSICA MEDEIROS GARRISON, et al., | } | |
| | } | |
| Defendants. | } | |

## MEMORANDUM OPINION

### I.    Introduction

This case is before the court on Motions to Dismiss filed by the following Defendants: Craft, Nowlin & Associates, Nowlin, Angela Crider, Preston Crider, Crow, Riley, Garrison, Gore, Millirons, Odom, Wermuth, Spartan Value Investors, Jackson, Mobley, Dillard, Baxley, JPMorgan Chase Bank, Birmingham Water Works, Al.com, Alabama Media Group, Strange, Jag Investment Strategies, James Williams, Lara Williams, Marie Claire, Welch, Cliff Sims, Yellowhammer News, and Duke.[1]  (Docs. # 11, 18, 19, 21, 22, 27, 28, 29, 30, 38, 39, 41, 54, 75, 77, 78, 79, 80, 84, 88, 132, 141, 146).   The Motions have been fully briefed.   Additionally, Plaintiffs have filed a "Request for Leave to Respond to Defendant Rob Riley's Reply," which includes a brief Plaintiffs ask the court to consider. (Doc. # 118).   The court grants Plaintiffs' request as to that matter, and has considered their brief (Doc. # 118) accordingly.

### II.    Factual Background

This case arises out of the foreclosure of a home Plaintiffs previously owned.   Because the contentions made in Plaintiffs' Amended Complaint rely on an assumed conspiracy between

---

[1] Every defendant in this case has filed a motion to dismiss Plaintiffs' Amended Complaint in its entirety.

at least twenty-nine actors, and because many of the defendants argue for dismissal based on the legal insufficiency of Plaintiffs' factual allegations, the court sets out Plaintiffs' factual allegations in their entirety rather than providing a summation of the facts pled by Plaintiffs. Plaintiffs allege as follows:

33.  In March 1990, the Shulers purchased the property at 5204 Logan Drive in Birmingham, executing a mortgage with Troy Nichols.  The Shulers refinanced with Troy Nichols in 1993.  They later received notice that their mortgage was held by Chase Mortgage, a subsidiary of JPMorgan Chase Bank.

34.  In May 2008, powerful political forces connected to then Gov. Bob Riley cheated Roger Shuler out of his job as an editor at the University of Alabama at Birmingham (UAB), where he had worked for 20 years.  Shuler became unemployed because his personal blog, *Legal Schnauzer*, wrote forcefully and accurately about corruption in Alabama state and federal courts.  Audiotaped evidence proves Shuler was "fired" because of his coverage about the unlawful political prosecution of former Gov. Don Siegelman, who was Bob Riley's chief political opponent.

35.  For good measure, the same political forces cheated Carol Shuler out of her job in 2009 at Infinity Insurance Co., which includes at least one major Riley ally (Drayton Nabers) on the board of directors.

36.  The Shulers filed federal employment-discrimination/retaliation lawsuits, but both were dismissed at summary judgment in flagrantly unlawful rulings by U.S. judges William Acker Jr. and Abdul Kallon, respectively.  Roger Shuler was allowed to conduct no discovery in his case, Carol Shuler never received adequate responses to key discovery requests in her case, and the court never compelled Infinity to engage properly in discovery.

37.  From 1990 to 2012, roughly 23 years, the Shulers always timely made their mortgage payments.  But the impact of unemployment and court-related cheat jobs caused them to start falling behind on their mortgage.

38.  The Shulers received a forbearance from Chase, and were in the process of starting to catch up on their mortgage payments, when Rob Riley and Liberty Duke filed a defamation lawsuit against both Shulers (even though Carol had nothing to do with *Legal Shnauzer* or the blog posts in question at the time).  Roger Shuler had reported that Riley and Duke had engaged in an extramarital affair, and their lawsuit claimed Shuler's reporting was false and defamatory.

39.  At about the same time, Jessica Medeiros Garrison (like Riley, a Republican political operative and ally of U.S. Circuit Judge William Pryor) filed a

defamation lawsuit against Roger Shuler, claiming his reports about her extramarital affair with Attorney General Luther Strange were false and defamatory.

40.  Riley and Duke sought a preliminary injunction against both Shulers, even though more than 200 years of First Amendment law have forbidden such prior restraints.  Riley and Duke sought a contempt order and incarceration of both Shulers – neither action had any basis in law – when the Shulers failed to appear at a hearing.  The Shulers did not appear because they had not been lawfully served and challenged service via a Motion to Quash, which the court never heard.  An attorney's review of the sealed record later showed that no summons had been issued at the time of the hearing, meaning the Shulers had multiple grounds for not appearing in court – No. 1 being that they had not been summoned.

41.  The Shulers were waiting for a ruling on their Motion to Quash when Shelby County deputies entered their basement garage on Oct. 23, 2013, beat up Roger Shuler, doused him with pepper spray, and took him to the Shelby County Jail for a stay of more than five months.  Roger Shuler became the only journalist in the Western Hemisphere to be incarcerated in 2013, the first in the United States since 2006, and apparently the only journalist in U.S. history to be incarcerated because of a contempt order related to an unlawful preliminary injunction in a defamation case.

42.  Roger Shuler's arrest was not connected to just the Riley/Duke case.  On Oct. 22, 2013, Shuler wrote a post about an apparent sweetheart deal Garrison received on a $400,000 home in Mountain Brook, after she had been forced to give up her job in AG Luther Strange's office after her ex-husband filed a complaint related to child custody.  One day after the report about the Garrison house deal, and its ties to Luther Strange, Roger Shuler was beaten inside his own home and arrested – all with deputies showing no warrant, never stating they had a warrant, and not stating their reasons for being on the premises.  Given that no warrant ever has been produced, it appears Roger Shuler was the victim of a state-sanctioned kidnapping – coordinated by Garrison, Strange, Riley, Duke, and perhaps others.

43.  With Roger Shuler in jail and Carol Shuler afraid to leave the house for fear of being arrested, the Shulers had no chance to address issues related to their mortgage.  Despite that, Chase provided no notice that the forbearance was going to be brought to a close.

44.  While in jail, Roger Shuler attended two hearings in the Garrison lawsuit, but he was shackled at the wrists and ankles and essentially was unable to defend himself.

45.  In March 2014, just as Roger Shuler was about to be released from jail, the Shulers received notice from attorney Robert Wermuth, of the Stephens Millirons

law firm in Huntsville, that Chase was foreclosing on the Shuler's home of almost 25 years.

46.   On March 26, 2014, Roger Shuler was released from jail – and he immediately had to work frantically with his wife in an effort to save their house. Alabama law holds that homeowners under threat of foreclosure must have at least 30 days to seek a solution – and because of Roger Shuler's incarceration – the Shulers did not even have that much time.   After five months in jail, Roger Shuler was suffering from a number of physical (loss of 25 pounds, dehydration) and psychological (PTSD) issues and was unable to address the complex issues associated with foreclosure.

47.   The Shulers were unable to obtain the financial or legal resources to save their home in such a short time.   On April 29, 2014, their home was auctioned on the steps of the Shelby County Courthouse.

48.   Attorney Robert Wermuth and the Stephen Millirons law firm of Huntsville conducted the foreclosure process.   But they provided the Shulers with no information once the sale was completed.   The Shulers did not even receive a copy of the foreclosure deed.

49.   A company called Spartan Investors, led by CEO Clayton Mobley and property manager Linday Jackson, left notice on the Shulers' door that they had purchased the property.   Attorney and auctioneer James J. Odom conducted the actual sale.

50.   The Shulers received notice from Alabama Power and Birmingham Water Works that their accounts had been placed in Spartan's name.   At one point, Spartan unlawfully had the water to the Shulers' home shut off.

51.   The Shulers, in July 2014, were forced to move to Springfield, Missouri (where Roger Shuler grew up), and they wound up losing almost all of their possessions – either during the move under traumatic conditions or during an unlawful eviction in Missouri.

52.   After moving out of state and with his home torn asunder, Roger Shuler had no way to defend the Garrison case or even appear – even though he had made multiple appearances while in jail.   During one of those appearances, Shuler inexplicably spent a week at the Jefferson County Jail, which deservedly has been the subject of litigation regarding its inhumane conditions for prisoners.

53.   With Shuler unable to defend himself, and even though he received no notice of a default hearing, Garrison was awarded a $3.5-million default judgment that has no basis in fact or law.   In both the Riley/Duke and Garrison/Strange cases, there was no jury trial as required by First Amendment law (in fact, there was no

trial at all in either case), meaning Shuler's reporting was not false or defamatory, as a matter of law.

54.  Who benefited most from the foreclosure on the Shulers' home? The top two answers would be Jessica Garrison and Luther Strange.  They were able to conclude Garrison's dubious lawsuit, and even get a default judgment, without ever having to face discovery or adversarial questioning of any kind.  Jessica Garrison, which inexplicably has been sealed from public view, has remained unsealed. (Sic).  It would have been a key piece of evidence had Roger Shuler not gone through a foreclosure and been able to defend himself.

55.  According to press reports, Jessica Garrison committed perjury during a hearing on her lawsuit.  It's unclear if Luther Strange also lied under oath, but press reports make that appear likely.

56.  Garrison and Strange engaged in a conspiracy to cheat the Shulers out of their home.  Among those aiding in the effort were Garrison attorney Bill Baxley, Rob Riley, Robert Wermuth and the Stephen Millirons law firm, unknown officials from JPMorgan Chase Bank, Liberty Duke and attorney Christina Crow, and probably others who were unknown at this time.

57.  Garrison and Strange hardly were the only ones to benefit from the Shulers' foreclosure.  Mere days after the Shulers moved out, Spartan Value Investors "flipped" the property to another real-estate investment outfit, called JAG Investment Strategies, led by James F. and Lara G. Williams.  JAG obtained a loan from Nowlin & Associates, led by Charles Nowlin and Justin Craft, apparently to renovate and market the Shulers' home.  Public records show that Preston and Angela Gulledge Crider, a married couple, bought the property at a price well below what it would have brought on the regular market.  The Shulers? They were out a home in which they had invested 25 years of their lives.

58.  A friend helped the Shulers obtain a copy of the foreclosure deed, which showed the house drew a price about $9,000 above the amount owed on the mortgage.  That amount, therefore, was the Shuler's equity, and it was due to be paid to them.  But Wermuth and Stephens (sic) Millirons never fulfilled their duties to disburse the funds to the Shulers.  Instead, Roger Shuler had to contact the firm, only to be told that the money had been sent to Liberty Duke, as an alleged creditor in the Riley/Duke lawsuit.  There never was a trial or final judgment in the Riley/Duke case, so Liberty Duke could not possibly have any lawful claim to the Shulers' equity funds.  She basically stole almost $9,000 from the Shulers, apparently with the help of lawyers Rob Riley and Christina Crow.

59.  In April 2015, Garrison was granted a $3.5-million default judgment against Roger Shuler.  Public records show that Shuler neither received nor was sent notice of the default-judgment hearing, so the judgment is void as a matter of law. Garrison attorney Joel Dillard told the press: "She is the righteous, kind, gracious

working mother of a young son she adores, and this fact magnified the outrageous wrong.  Shuler's statements about her were not just libelous, they were plucked from thin air, and were cyber-bullying of the worst order."

60.  In October 15, 2015, Garrison was the subject of an "as-told-to" story about her $3.5-million default judgment against Roger Shuler, in *Marie Claire*, an international women's magazine and Web site that is published in the United States by Hearst Corporation.  Title of the article (sic), written by Liz Welch, is "A blogger claimed I had an affair with my boss, and I sued him for $3.5 million." In the story, Garrison falsely intimates that I (sic) was stalking her.  She falsely claims I (sic) wrote that Luther Strange was the father of her son.  She falsely claims there was a trial in the defamation case.

61.  *Yellowhammer News*, a conservative political Web site run by publisher Cliff Sims, picked up the *Marie Claire (MC)* article and ran it verbatim.  *Al.com* reporter Leada Gore, an employee of Alabama Media Group, picked up on the *MC* article and repeated a number of Garrison's false statements, including the claim that I (sic) had reported her son was Luther Strange's child.  Gore and *al.com* (Alabama Media Group) also provided a link to the full *MC* article.

(Doc. # 10 at ¶¶ 33-61).

## III.    Standard of Review

The Federal Rules of Civil Procedure require only that the complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). Still, the complaint must include enough facts "to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[2]  Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations.  *Twombly*, 550 U.S. at 555, 557.  In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the

---

[2]  In various submissions to the court, Plaintiffs argue that neither *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) nor *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) changed the pleading standard of Federal Rule of Civil Procedure 8.  (*See* Doc. # 96 at p. 3, Doc. # 134 at p. 2).  Accordingly, in their briefs Plaintiffs argue that the court should not consult *Twombly* and *Iqbal* when addressing the standard pleadings must meet to survive a motion to dismiss.  (*Id.*).  Those arguments are off the mark.  To be sure, the Federal Rules of Civil Procedure govern the pleading standards in federal courts; however, the Supreme Court's direction with respect to the interpretation of those pleading standards is binding on this court.

complaint in the light most favorable to the nonmoving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,' " the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556. After *Iqbal*, which applied the *Twombly* pleading standard in a civil rights/qualified immunity context, "there is no longer a 'heightened pleading' standard in 'cases governed by Rule 8(a)(2), including civil rights [cases]' under § 1983." *Saunders v. Duke*, 766 F.3d 1262, 1266 (11th Cir. 2014) (quoting *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010)). The Supreme Court has recently identified "two working principles" for a district court to use in applying the facial plausibility standard. First, in evaluating motions to dismiss, the court must assume the veracity of well-pleaded factual allegations; however, the court does not have to accept as true legal conclusions when they are "couched as . . . factual allegation[s]." *Iqbal*, 556 U.S. at 678. Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

Application of the facial plausibility standard involves two steps. Under prong one, the court must determine the scope and nature of the factual allegations that are well-pleaded and assume their veracity; and under prong two, the court must proceed to determine the claim's plausibility given the well-pleaded facts. That task is context specific and, to survive the motion,

the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Id.* If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Id.*

Nevertheless, "*pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys, and will, therefore, be liberally construed." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003). Therefore, "wildly implausible allegations in the complaint should not be taken to be true, but the court ought not penalize the litigant for linguistic imprecision in the more plausible allegations." *Miller v. Donald*, 541 F.3d 1091 (11th Cir. 2008).

## IV.   Counts One, Two, and Three (Violations of the First, Fourth, and Fourteenth Amendments)

The court will assess each of the counts pled in Plaintiffs' Amended Complaint,[3] in turn. Counts One, Two, and Three of Plaintiffs' Amended Complaint (Doc. #10) state causes of action for constitutional violations asserted by way of 42 U.S.C. §1983 ("Section 1983"). Plaintiffs allege Counts One, Two, and Three against Defendants Garrison, Strange, Baxley, Duke, Crow, and Riley. The court will also address the facts pled against each named defendant.

### A.   Plaintiffs Have Not Established that Defendants Garrison, Baxley, Crow, Riley, Duke are State Actors Suable under Section 1983

Count One of Plaintiffs' Amended Complaint asserts that Defendants Garrison, Baxley, Crow, Riley, and Duke committed violations of the First Amendment of the United States Constitution. In support of their claim, Plaintiffs incorporate paragraphs 1-60 of their Amended Complaint. Plaintiffs further claim that the named Defendants, "acting under the color of state law or in conjunction with state actors, knowingly and maliciously took steps to retaliate against

---

[3] Plaintiffs' Amended Complaint, not their originally pled Complaint, is the operative pleading in this case. *See Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1202 (11th Cir. 2011) (stating that "an amended complaint supersedes the initial complaint and becomes the operative pleading in the case.").

[Plaintiffs] for Roger Shuler's reporting and to stop future reporting." (Doc. #10 at ¶ 62). Plaintiffs contend that the named Defendants, because of Plaintiff Roger Shuler's reporting on his blog, retaliated against him by seeking his unlawful arrest and initiating a wrongful foreclosure of Plaintiffs' home.  (Doc. #10 at ¶ 63).

Count Two of Plaintiffs' Amended Complaint asserts that Defendants Garrison, Baxley, Duke, Crow, and Riley committed violations of the Fourth Amendment of the United States Constitution.  In support of their claim, Plaintiffs incorporate paragraphs 1-60 of their Amended Complaint.  Plaintiffs further claim that the named defendants, "acting under color of state law or in conjunction with state actors, subjected [Plaintiffs] to unlawful seizures, in violation of the Fourth Amendment." (Doc. #10 at ¶ 65).  Plaintiffs contend that the named Defendants, by their actions, caused Plaintiffs' real and personal property to be unlawfully seized.  (Doc. # 10 at ¶ 66).

Count Three of Plaintiffs' Amended Complaint asserts that Defendants Garrison, Baxley, Duke, Crow, and Riley committed violations of the Fourteenth Amendment of the United States Constitution.  In support of their claim, Plaintiffs incorporate paragraphs 1-60 of their Amended Complaint.   Plaintiffs further claim that the named Defendants "took steps to ensure that [Plaintiffs'] rights to due process and equal protection would be trampled, in violation of the Fourteenth Amendment." (Doc. # 10 at ¶ 68).

Counts One, Two, and Three are due to be dismissed as to Defendants Garrison, Baxley, Duke, Crow, and Riley because Plaintiffs have failed to allege facts demonstrating that they were state actors and liable for suit under Section 1983.

To state a claim for relief in § 1983 action, a plaintiff "must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged

deprivation was committed under color of state law…. the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49–50 (1999).

The Eleventh Circuit has employed three tests in determining whether the actions of a private person or entity may properly be attributed to the state:

> (1) [T]he public function test; (2) the state compulsion test; and (3) the nexus/joint action test. The public function test limits state action to instances where private actors are performing functions "traditionally the exclusive prerogative of the state." The state compulsion test limits state action to instances where the government "has coerced or at least significantly encouraged the action alleged to violate the Constitution." The nexus/joint action test applies where "the state has so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." We must determine on a case-by-case basis whether sufficient state action is present from a non-state actor (defendant) to sustain a section 1983 claim.

*Willis v. Univ. Health Servs., Inc.*, 993 F.2d 837, 840 (11th Cir. 1993) (internal citations omitted).

Because Plaintiffs' Amended Complaint fails to plead facts sufficient to show (under any of the above tests) that Defendants Garrison, Baxley, Duke, Crow, and Riley were state actors, Plaintiffs' § 1983 claims against them fail as a matter of law.

### 1.     Defendant Garrison

Plaintiffs have more to say about Defendant Garrison than most of the Defendants named in the Amended Complaint, and make a number of factual allegations regarding her.  Plaintiffs contend that "Defendant Jessica Medeiros Garrison is an attorney licensed to practice law in Alabama, with the Balch & Bingham law firm of Birmingham, Alabama."  (Doc. # 10 at ¶ 4).  Further, "[Defendant] Jessica Medeiros Garrison (like [Defendant] Riley, a Republican political operative and ally of U.S. Circuit Judge William Pryor) filed a defamation lawsuit against Roger

Shuler, claiming his reports about her extramarital affair with Attorney General Luther Strange were false and defamatory." (Doc. # 10 at ¶ 39).

In describing his former arrest, Plaintiff Roger Shuler contends his "arrest was not connected to just the Riley/Duke case.  On [October] 22, 2013, Shuler wrote a post about an apparent sweetheart deal [Defendant] Garrison received on a $400,000 home in Mountain Brook, after she had been forced to give up her job in AG Luther Strange's office after her ex-husband filed a complaint related to child custody.  One day after the report about the Garrison house deal, and its ties to Luther Strange, Roger Shuler was beaten inside his own home and arrested – all with deputies showing no warrant, never stating they had a warrant, and not even stating their reasons for being on the premises.  Given that no warrant ever has been produced, it appears Roger Shuler was the victim of a state-sanctioned kidnapping – coordinated by Garrison, Strange, Riley, Duke, and perhaps others."  (Doc. # 10 at ¶42).

Plaintiffs' Amended Complaint further states that Plaintiff Roger Shuler was unable to defend the lawsuit Garrison had filed against him because Plaintiffs had moved out of state, and as a result Defendant Garrison was awarded a $3.5 million default judgment against Plaintiff Roger Shuler. (Doc. # 10 at ¶¶ 52, 53, 59).  Plaintiffs contend that Defendant Garrison (as well as Defendant Strange) "benefited most from the foreclosure on [Plaintiffs'] home", that Defendant Garrison committed perjury during a hearing related to her lawsuit against Plaintiffs, and that Defendant Garrison "engaged in a conspiracy to cheat [Plaintiffs] out of their home."  (Doc. # 10 at ¶¶ 54, 55, 56).

When all of these allegations are taken as true, the sum and substance of Plaintiffs' Amended Complaint is this: Defendant Garrison filed a lawsuit against Plaintiff Roger Shuler for defamation and was awarded a default judgment against Plaintiff Roger Shuler in that suit.  In

addition to those allegations, Plaintiffs have made only the conclusory statement that Defendant Garrison engaged in a conspiracy to cheat them out of their homes and speculated that "it appears Roger Shuler was the victim of a state-sanctioned kidnapping." (Doc. # 10 at ¶¶ 56, 42). These contentions, taken as true, do not sufficiently allege that Defendant Garrison acted under the color of state law under any of the three tests employed by the Eleventh Circuit.

While Defendant Garrison is accused of filing and litigating a defamation action against Plaintiff Roger Shuler, filing a lawsuit is not a public function such that it is "traditionally the exclusive prerogative of the state."   *Paisey v. Vitale,* 807 F.2d 889, 893–94 (11th Cir.1986) (discussing *Henry v. First Nat'l Bank of Clarksdale,* 444 F.2d 1300 (5th Cir.1971)) ("To apply [the test for state action] to the mere filing of a private civil complaint in a state court and conclude that 'state action' results would be to demean the judicial process.").   Further, Plaintiffs have alleged no facts sufficient to satisfy the state compulsion or nexus/joint action tests.   The only allegations made by Plaintiffs involving Defendant Garrison's concerted action with the government are conclusory in nature (*i.e.,* Defendant "engaged in a conspiracy") and speculative (*i.e.,* "it appears that…").   Conclusory statements alone are not sufficient to defeat a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *See also Harvey v. Harvey*, 749 F. Supp. 1118, 1124 (M.D. Ga. 1990), aff'd, 949 F.2d 1127 (11th Cir. 1992) (reasoning that a plaintiff does not establish that an individual is a state actor with "little but conclusory statements that he was involved in a conspiracy to deprive her of her rights.").

Similarly, a plaintiff's statement that it "appears" he was wronged, without further factual support, is insufficient to defeat a motion to dismiss.   *See, e.g. Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (finding that a plaintiff should plead the "who," "what," "where," "when," and "how," of the claim asserted); *Jackson v. City of Homewood*, 2013 WL 2352430 at

*7 (N.D. Ala. May 29, 2013 (requiring "specific factual allegations" against a defendant to survive a motion to dismiss).  As such, the facts pled against Defendant Garrison do not establish that she is a state actor subject to suit under § 1983.

### 2.      Defendant Baxley

Plaintiffs contend that Defendant Baxley is an attorney licensed to practice law in Alabama.  (Doc. # 10 at ¶ 6).  Plaintiffs only mention Defendant Baxley one other time in their Amended Complaint: Defendant Baxley is included in a list of "those aiding in the effort" to "cheat [Plaintiffs] out of their home."  (Doc. # 56 at ¶ 56).

This lone mention does not establish Defendant Baxley as a state actor subject to suit under § 1983.  Without question, his role as an attorney alone does not make him a state actor for purposes of § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312 (1981) (holding that even a public defender appointed to represent a criminal defendant does not "act under the color of state law" in performing a lawyer's traditional functions as counsel).

Further, Plaintiffs' mention of Defendant Baxley in a list of Defendants who engaged in a conspiracy against Plaintiffs is a conclusory statement that does not support a finding that Defendant Baxley "acted under the color of state law."  Such a conclusory statement alone is not sufficient to establish that Defendant Baxley was a state actor. *See, e.g. Harvey*, 749 F. Supp. at 1124; *Wright v. Massey*, 2012 WL 629435, at *2 (M.D. Ga. Feb. 25, 2012).  As such, Plaintiffs have failed to plead sufficient facts to establish Defendant Baxley was a state actor, and the constitutional claims against him are due to be dismissed accordingly.

### 3.      Defendant Duke

Plaintiffs allege that Defendant Duke is a registered lobbyist in Alabama.  (Doc. # 10 at ¶ 7).  Plaintiffs further allege that Plaintiff Roger Shuler wrote a story on his blog claiming that

Defendants Duke and Riley had an extramarital affair, and that they filed a defamation lawsuit against Plaintiffs as a result.  (Doc. # 10 at ¶ 38).  In conjunction with the defamation suit, Defendants Duke and Riley sought a preliminary injunction against Plaintiffs, and sought a contempt order against Plaintiffs when they failed to appear at a hearing.  (Doc. # 10 at ¶ 40).  Plaintiff Roger Shuler was ultimately arrested, an arrest which Plaintiffs' Amended Complaint attributes to the "Riley/Duke case" as well as a "coordinated" "state-sanctioned kidnapping".  (Doc. # 10 at ¶ 42).  Plaintiffs further allege that Defendant Duke was among those "engaged in a conspiracy to cheat the Shulers out of their home" and that Defendant Duke received $9,000 of Plaintiff's equity following the sale of their former house.  (Doc. # 10 at ¶¶ 56, 58).  Defendant Duke had no right to those funds as a judgment creditor, Plaintiffs' claim, because there was no "trial of final judgment in the Riley/Duke lawsuit."  (Doc. # 10 at ¶ 58).

As mentioned above, the sole act of filing a lawsuit does not make an otherwise private individual a state actor for § 1983 purposes. *Paisey,* 807 F.2d at 893–94.  Accordingly, Plaintiffs' allegations that Defendant Duke filed a lawsuit against Plaintiff Roger Shuler and litigated that suit do not establish that Defendant Duke is a state actor.  *See Crossdale v. Burandt*, 2015 WL 2365754, at *2 (M.D. Fla. May 18, 2015) *citing Dennis v. Sparks*, 449 U.S. 24, 28 (1980) (finding that defendants who file suit against a plaintiff are not state actors, and "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge.").

Similarly, Plaintiffs' allegations related to Plaintiff Roger Shuler's arrest do not establish Defendant Duke as a state actor.  While Plaintiffs contend that Plaintiff Roger Shuler's arrest was "connected to" the Riley/Duke case, they fail to allege any specific conduct by Defendant Duke which could be construed as state action.  *See Dye v. Radcliff*, 174 F. App'x 480, 483 (11th

14

Cir. 2006) (holding that "a private party does not act under color of state law merely by calling upon official state authority when he does not also join in the exercise thereof."); *Woods v. Valentino*, 511 F. Supp. 2d 1263, 1274 (M.D. Fla. 2007) (finding that a plaintiff failed to allege state action where he alleged that the defendants filed false police reports, obtained a false injunction, and made a false complaint that plaintiff violated that injunction, because plaintiff failed to plead evidence that any state authority encouraged that conduct or engaged in joint action with the defendants).

### 4.    Defendant Crow

Plaintiffs allege that Defendant Crow is an attorney licensed to practice law in Alabama. (Doc. # 10 at ¶ 8).  Plaintiffs' Amended Complaint lists Defendant Crow among those who are alleged to have "engaged in a conspiracy to cheat [Plaintiffs] out of their home."  (Doc. # 10 at ¶ 56).  The only other mention of Defendant Crow in Plaintiffs' Amended Complaint states that Defendant "Duke basically stole almost $9,000 from [Plaintiffs], apparently with the help of lawyers [Defendant] Riley and [Defendant] Crow."  (Doc. # 10 at ¶ 58).

These statements alone are simply insufficient to demonstrate that Defendant Crow "acted under the color of state law."  The inclusion of Defendant Crow in the conclusory list of those who "engaged in a conspiracy to cheat [Plaintiffs] out of their home" does not demonstrate that Defendant Crow was a state actor.  *See, e.g. Harvey*, 749 F. Supp. at 1124; *Wright*, 2012 WL 629435, at *2.  Further, Plaintiffs' contention that Defendant Crow, a private actor, helped Defendant Duke, another private actor, "basically" steal from Plaintiffs fails to establish, even at the pleadings stage, that Defendant Crow is a state actor for purposes of § 1983 liability.

### 5.     Defendant Riley

Plaintiffs allege that Defendant Riley is an attorney licensed to practice law in Alabama. (Doc. # 10 at ¶ 26).   Plaintiffs allege that Plaintiff Roger Shuler wrote a story on his blog claiming that Defendants Duke and Riley had an extramarital affair, and that they filed a defamation lawsuit against Plaintiffs as a result.   (Doc. # 10 at ¶ 38).   In conjunction with the defamation suit, Defendants Duke and Riley sought a preliminary injunction against Plaintiffs, and sought a contempt order against Plaintiffs when they failed to appear at a hearing.   (Doc. # 10 at ¶ 40).   Plaintiff Roger Shuler was ultimately arrested, an arrest which Plaintiffs' Amended Complaint attributes to the "Riley/Duke case" as well as a "coordinated" "state-sanctioned kidnapping".   (Doc. # 10 at ¶ 42).   Plaintiffs further allege that Defendant Riley was among those "engaged in a conspiracy to cheat [Plaintiffs] out of their home."   (Doc. # 10 at ¶¶ 56).

As mentioned above, Plaintiffs' conclusory allegations that Defendant Riley was one of those who engaged in a conspiracy to cheat Plaintiffs' out of their home is not sufficient to establish that Defendant Riley was a state actor for purposes of § 1983.   *See, Harvey*, 749 F. Supp. at 1124; *Wright*, 2012 WL 629435, at *2.   Similarly, Plaintiffs' contention that "it appears [Plaintiff] Roger Shuler was the victim of a state-sanctioned kidnapping" does not provide a sufficient factual basis to support a finding that Defendant Riley "acted under the color of state law."   Finally, Plaintiffs' contention that Defendant Riley filed a lawsuit against Plaintiff Roger Shuler, and sought a contempt order when Plaintiff Roger Shuler failed to show up in court, is not sufficient to demonstrate that Defendant was a state actor under § 1983. *See Paisey v. Vitale,* 807 F.2d at 893–94.

**B.      Plaintiffs Have Not Established that Defendant Strange is a State Actor Suable Under Section 1983**

Plaintiffs contend that Defendant Strange is attorney general of Alabama and that he is sued individually pursuant to § 1983. (Doc. # 10 at ¶ 5).  But Plaintiffs' Amended Complaint offers few factual allegations related to Defendant Strange.  Plaintiffs contend that Plaintiff Roger Shuler was arrested one day after his report on "the Garrison house deal" and its ties to Defendant Strange, and allege that it "appears" that Plaintiff Roger Shuler was the victim of a kidnapping coordinated by Defendant Strange, among others.  (Doc. # 10 ¶ 42).  Plaintiffs also offer the following question and answer in their Amended Complaint:

> Who benefited most from the foreclosure on the Shulers home? The top two answers would be Jessica Garrison and Luther Strange.  They were able to conclude Garrison's dubious lawsuit, and even get a default judgment, without ever having to face discovery or adversarial questioning of any kind.

(Doc. # 10 at ¶ 54).  Plaintiffs also allege that it is "unclear if [Defendant] Luther Strange lied under oath, but press reports make that appear likely.  (Doc. # 10 at ¶ 55).  Plaintiffs further state that Defendant Strange engaged in a conspiracy with others to cheat Plaintiffs out of their home.  (Doc. # 10 at ¶ 56).

Specifically regarding Count One (violation of the First Amendment) of Plaintiffs' Amended Complaint, Plaintiffs allege Defendant Strange (among others) "knowingly and maliciously took steps to retaliate against [Plaintiffs] for [Plaintiff] Roger Shuler's reporting and to stop future reporting."  (Doc. # 10 at ¶ 62).  Plaintiffs contend that this retaliation consisted of "seeking Roger Shuler's unlawful arrest and initiating a wrongful foreclosure that caused [Plaintiffs] to lose their home of 25 years."  (Doc. # 10 at ¶ 63).

Regarding Count Two (violation of the Fourth Amendment) of Plaintiffs' Amended Complaint, Plaintiffs allege that Defendant Strange (among others) "subjected [Plaintiffs] to

unlawful seizures." (Doc. # 10 at ¶ 65). Specifically, Defendant Strange is alleged to have "caused [Plaintiffs'] real and personal property to be unlawfully seized." (Doc. # 10 at ¶ 66).

Regarding Count Three (violation of the Fourteenth Amendment) of Plaintiffs' Amended Complaint, Plaintiffs allege that Defendant Strange (among others) "took steps to ensure that [Plaintiffs'] rights to due process and equal protection would be trampled, in violation of the Fourteenth Amendment." (Doc. # 10 at ¶ 68). On its face, Plaintiffs' Amended Complaint fails to state sufficient facts to support claims against Defendant Strange.

### i. Plaintiffs Have Failed to Establish Their First Amendment Retaliation Claim

"To establish a First Amendment retaliation claim, a plaintiff must show that (1) her speech was constitutionally protected; (2) she suffered adverse conduct that would likely deter a person of ordinary firmness from engaging in such speech; and (3) there was a causal relationship between the adverse conduct and the protected speech." *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011). In order to establish a causal connection, Plaintiffs must allege that their protected conduct was a "motivating factor" behind the alleged misconduct. *Smith v. Florida Dep't of Corr.,* 713 F.3d 1059, 1063 (11th Cir. 2013); *also Eisenberg v. City of Miami Beach*, 1 F.Supp.3d 1327, 1344 (S.D. Fla. 2014) ("Plaintiff must identify a sequence of events from which a retaliatory motive can be inferred, notwithstanding other non-retaliatory motives the defendant may harbor.").

Plaintiffs' arguments against Defendant Strange are premised on the notion that he "took steps" to seek Plaintiff "Roger Shuler's unlawful arrest," presumably in retaliation for Plaintiff Roger Shuler's blogging. While Plaintiff Roger Shuler's blogging could be considered constitutionally protected speech, Plaintiffs' Amended Complaint fails to plead the requisite "adverse conduct" and "causal relationship" required to support a First Amendment retaliation

claim.  Put simply, Plaintiffs' Amended Complaint speculatively asserts that Defendant Strange (among others) caused his arrest to prevent him from further blogging, but fails to plead a single factual allegation of specific conduct by Defendant Strange related to Plaintiff Roger Shuler's arrest.

### ii. Plaintiffs Have Failed to Establish Their Fourth Amendment and Fourteenth Amendment Claims

Plaintiffs' Fourth Amendment and Fourteenth Amendment Claims against Defendant Strange are due to be dismissed for similar reasons.  To plead a Fourth Amendment claim under § 1983, a plaintiff must allege a government seizure and that seizure must be unreasonable. *Reyes v. Maschmeier*, 446 F.3d 1199, 1203 (11th Cir. 2006).  While Plaintiffs summarily assert that Defendant Strange (and others) "actions caused the Shulers' real and personal property to be seized," they fail to plead any factual basis to establish that Defendant Strange contributed in any way to an unlawful search and seizure.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of the law."  U.S. Const. amend. XIV § 1.  Plaintiffs' claims under the Fourteenth Amendment appear to be based on substantive due process arguments.  While this is the case, as mentioned above, Plaintiffs' Amended Complaint offers little more than that it "appears" Plaintiff Roger Shuler was a victim of a state sanctioned kidnapping.  Notably, a section 1983 claimant may not proceed under a theory of respondeat superior; rather, claims of supervisory liability must be premised on the supervisor's actual involvement in the constitutional violation or actions of the supervising official which are causally connected to the alleged constitutional violation.  *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994); *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003).  Accordingly, Plaintiffs' Amended Complaint fails to plead any facts alleging individual

conduct by Defendant Strange in violation of their Due Process rights.   Further, they have alleged no conduct that, if taken as true, could form the basis of a claim against Defendant Strange in his supervisory capacity as attorney general.   Plaintiffs' conclusory allegations and cryptic reference to what "appears" to be "a state-sanctioned kidnapping" fail to plausibly plead any basis to impute supervisory liability onto Defendant Strange.

Plaintiffs' equal protection claim against Defendant Strange is similarly due to fail.   The Equal Protection Clause of the Fourteenth Amendment requires that no state "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV § 1.

> Equal-protection claims generally concern governmental classification and treatment that impacts an identifiable group of people differently than another group of people. *Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.,* 682 F.3d 1293, 1296 (11th Cir.2012) (per curiam). To establish a "class of one" equal protection claim, the plaintiff must show that "[he] has been intentionally treated different from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 1074, 145 L.Ed.2d 1060 (2000) (per curiam); *see also Grider v. City of Auburn*, 618 F.3d 1240, 1263–64 (11th Cir.2010).

*Foley v. Orange Cty.*, 638 F. App'x 941, 944 (11th Cir.), *cert. denied sub nom. Foley v. Orange Cty., Fla.*, 137 S. Ct. 378 (2016).   Plaintiffs do not allege that any government classification occurred in the present case, nor do they allege that they were intentionally treated differently from others similarly situated.   Accordingly, Plaintiffs' Fourteenth Amendment claim against Defendant Strange is due to be dismissed.

Further, Defendant Strange contends that he is entitled to both qualified immunity and prosecutorial immunity.   (Doc. # 79 at p. 1).   The court notes that Plaintiffs have failed to allege specific conduct by Defendant Strange that would even suggest that he violated Plaintiffs' constitutional rights (much less their clearly established rights).   *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)) ("Qualified immunity protects government officials

performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'").

## V.    Count Four (Wrongful Foreclosure)

Count Four of Plaintiffs' Amended Complaint asserts a claim for wrongful foreclosure under Alabama State law.  Plaintiffs bring their wrongful foreclosure claim against Defendants Garrison, Strange, Baxley, Duke, Crow, JPMorgan Chase Bank ("Chase"), Wermuth, Millirons, Spartan Value Investors, Mobley, Jackson, JAG Investment Strategies, James Williams, Lara Williams, Nowlin and Associates, Charles Nowlin, Craft, Preston Crider, Angela Crider, Odom, Riley, Birmingham Water Works, and Dillard.[4]

In support of their wrongful foreclosure claim, Plaintiffs incorporate paragraphs 1-60 of their Amended Complaint, and further allege that the named Defendants "took actions to foreclose on [Plaintiffs'] home for unlawful reasons."  (Doc. # 10 at ¶ 70).  Plaintiffs further contend that the named Defendants took "these actions" "to turn [Plaintiffs'] lives upside down in retaliation for [Plaintiff] Roger Shuler's accurate reporting on matters of public interest. Specifically, [D]efendants' actions forced [Plaintiffs] to move out of Alabama, which [D]efendants hoped would cause reporting at [Plaintiffs' blog] to cease."  (Doc. # 10 at ¶ 71). Plaintiffs further claim that Defendants "had the goal of oppressing [Plaintiffs] and furthering the interests of multiple third parties."  (Doc. # 10 at ¶ 72).

Alabama recognizes a "wrongful foreclosure" claim where "a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor." *Reeves Cedarhurst Dev. Corp. v. First American Fed. Sav. & Loan Ass'n*, 607 So.2d

---

[4]  Plaintiffs' Amended Complaint states that count four is asserted against "All Defendants, except Marie Claire, Liz Welch, Yellowhammer News, Cliff Sims, Alabama Media Group, [and] Leada Gore."  (Doc. # 10 at p. 13).

180, 182 (Ala. 1992); *see also Johnson v. Shirley*, 539 So. 2d 165, 168 (Ala. 1988) (finding that a wrongful foreclosure claim exists where mortgagee uses the power of sale for such purposes as oppressing the debtor, or serving the purposes of other individuals).   A wrongful foreclosure action is one brought by the mortgagor against the mortgagee. *See, e.g.*, *Jackson v. Wells Fargo Bank, N.A.*, 90 So. 3d 168, 171 (Ala. 2012); *Paint Rock Properties v. Shewmake,* 393 So.2d 982, 984 (Ala. 1981).

Plaintiffs' Amended Complaint states that Chase was the mortgagee with respect to the loan on Plaintiffs' former house, that Plaintiffs fell behind on their mortgage payments, and that Chase ultimately foreclosed on the property. (Doc. # 10 at ¶¶ 33, 37, 38, 43, 45, 46, 47). Because a "wrongful foreclosure" claim may be pursued against the mortgagee, and because Plaintiffs' own Amended Complaint asserts that Chase, and Chase alone, was the mortgagee of the mortgage in question, Plaintiffs' "wrongful foreclosure" claims against Defendants Garrison, Strange, Baxley, Duke, Crow, Wermuth, Millirons, Spartan Value Investors, Mobley, Jackson, JAG Investment Strategies, James Williams, Lara Williams, Nowlin and Associates, Charles Nowlin, Craft, Preston Crider, Angela Crider, Odom, Riley, Birmingham Water Works, and Dillard are due to be dismissed.

### a. Defendant Chase

In addition to the facts mentioned above, Plaintiffs aver a number of specific facts related to the foreclosure of their home.  Plaintiffs contend that their mortgage was held by Chase Mortgage, a subsidiary of JPMorgan Chase Bank.  (Doc. # 10 at ¶ 33).  Plaintiffs' Amended Complaint further states that Plaintiffs regularly made their mortgage payments until 2012, at which point "the impact of unemployment and court-related cheat jobs caused them to start falling behind on their mortgage."  (Doc. # 10 at ¶ 37).  Plaintiffs state that they received a

forbearance from Defendant Chase, and "were in the process of starting to catch up on their mortgage payments" when Defendants Riley and Duke and Defendant Garrison filed their lawsuits against Plaintiffs.  (Doc. # 10 at ¶¶ 38, 39).

Plaintiffs aver that in March 2014, before Plaintiff Roger Shuler was released from jail, Plaintiffs received notice that Defendant Chase intended to foreclose on their home.  (Doc. # 10 at ¶ 45).  Plaintiffs contend that Alabama law provided them 30 days to "seek a solution," but that they were not afforded that time due to Plaintiff Roger Shuler's incarceration and subsequent physical and psychological "issues."  (Doc. # 10 at ¶¶ 45, 46).  As a result, Plaintiffs "were unable to obtain the financial or legal resources to save their home" and Defendants Wermuth and the Stephens Millirons law firm conducted the foreclosure sale of their home on April 29, 2014.  (Doc. # 10 at ¶ 48).  In their pleadings, Plaintiffs have also listed those parties who they contend benefitted from the foreclosure of their home.  (Doc. # 10 at ¶¶ 54, 57).

Plaintiffs' Amended Complaint fails to plead facts sufficient to state a claim for wrongful foreclosure against Defendant Chase.  In order to state a claim for "wrongful foreclosure," a Plaintiff must plead facts that could plausibly show that a mortgagee used "the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor." *Reeves Cedarhurst Dev. Corp.*, 607 So.2d at 182.  "A formulaic recitation of the elements of a cause of action" does not meet Rule 8 standards, nor does a pleading based on "labels and conclusions" without supporting factual allegations.  *Twombly*, 550 U.S. at 555, 557.

The assertions Plaintiffs have advanced in support of their "wrongful foreclosure" claim (*see* Doc. # 10 at ¶¶ 71-73) are conclusory and are not supported by specific factual allegations. Plaintiffs contend that all twenty-two of the defendants named in Count Four took actions to foreclose on Plaintiffs' home "for an ulterior purpose".  (*See* Doc. # 10 at ¶¶ 70, 71).  This

contention alone does not support Plaintiffs' "wrongful foreclosure" claim absent additional, plausible factual allegations.   It is not enough to state an element of a claim for wrongful foreclosure (*i.e*, "Defendants took these actions for an ulterior purpose"), but fail to plead facts supporting that contention.   Notably, Plaintiffs' Amended Complaint does not contain any plausibly pled facts suggesting that Defendant Chase foreclosed on Plaintiffs' home for some reason other than that Plaintiffs were in default and Chase desired to secure the debt owed. Nor are there any plausible factual allegations that Chase had any relationship at all with the other co-defendants (other than its foreclosure counsel).   Indeed, Plaintiffs' Amended Complaint acknowledges that they fell behind on their mortgage payments, and Defendant Chase ultimately foreclosed on their house.   That other Defendants (including Plaintiffs' judgment creditors) stood to benefit from the foreclosure is irrelevant based upon the well pleaded facts in this case.[5] Because a plaintiff's complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully", Plaintiffs' "wrongful foreclosure" claim against Defendant Chase is dismissed.

## VI.     Count Five (Conversion)

Count Five of Plaintiffs' Amended Complaint asserts a claim for conversion under Alabama State law.  Plaintiffs bring their conversion claim against Defendants Garrison, Strange, Baxley, Duke, Crow, JPMorgan Chase Bank ("Chase"), Wermuth, Millirons, Spartan Value

---

[5] Plaintiffs' conclusory contention that they did not receive the appropriate amount of time to cure their default (Doc. # 10 at ¶ 46) is undone by the facts pled in their own Amended Complaint.  Plaintiffs claim that they had thirty (30) days to cure their default.  (*Id*.).  While their Amended Complaint does not provide the specific date that they received notice that Defendant Chase was foreclosing on their former house, Plaintiffs do state that they received notice "just as Roger Shuler was about to be released from jail."  (Doc. # 10 at ¶ 45).  Plaintiffs' Amended Complaint states that Plaintiff Roger Shuler was released from jail on March 26, 2014, which in turn means that Plaintiffs received notice of the foreclosure of their house before that date.  (Doc. # 10 at ¶ 46).  Plaintiffs' house was not sold until April 29, 2014 (Doc. # 10 at ¶ 27), which is more than thirty (30) days later than the latest possible date (based on Plaintiffs' own pleadings) that Plaintiffs actually received notice of Defendant Chase's intent to foreclose.

Investors, Mobley, Jackson, JAG Investment Strategies, James Williams, Lara Williams, Nowlin and Associates, Charles Nowlin, Craft, Preston Crider, Angela Crider, Odom, Riley, Birmingham Water Works, and Dillard.[6]

In support of their conversion claim, Plaintiffs incorporate paragraphs 1-60 of their Amended Complaint, and further allege that the named Defendants "participated in a scheme to take [Plaintiffs'] real and personal property and convert it to [sic] their own use or purposes." (Doc. # 10 at ¶ 74). Plaintiffs further contend that they lost their "home" and "almost all of its contents." (Doc. # 10 at ¶ 75). Under Alabama law, "an action for conversion will not lie for the taking of real property." *Faith, Hope & Love, Inc. v. First Alabama Bank of Talladega Cty., N.A.*, 496 So. 2d 708, 711 (Ala. 1986); *Hatfield v. Spears*, 380 So. 2d 262, 265 (Ala. 1980) (finding that Alabama law does not allow a claim for conversion of personal property which is incorporated into real property). As such, Plaintiffs' allegations that the named defendants converted their real property do not support a claim for conversion.

While Plaintiffs' Amended Complaint does not specifically identify what personal property forms the basis of their conversion claim, the court has examined Plaintiffs' Amended Complaint in its entirety and identified the following facts as those that purport to provide support for their conversion claim. Plaintiffs contend that in July 2014, they "were forced to move Springfield, Missouri… and they wound up losing almost all of their possessions – either during the move under traumatic conditions or during an unlawful eviction in Missouri." (Doc. # 10 at ¶ 51). Plaintiffs further allege that their former house sold for "about $9,000" above the amount owed on the mortgage and that that money was "sent to [Defendant] Duke" rather than Plaintiffs. (Doc. # 10 at ¶ 58). Plaintiffs contend that "[t]here never was a trial or final judgment

---

[6] Plaintiffs' Amended Complaint states that Count Five is asserted against "All Defendants, except Marie Claire, Liz Welch, Yellowhammer News, Cliff Sims, Alabama Media Group, [and] Leada Gore." (Doc. # 10 at p. 13).

in the Riley/Duke case, so [Defendant] Duke could not possibly have any lawful claim to [Plaintiffs'] equity funds" and as such "[Defendant Duke] basically stole almost $9,000 from [Plaintiffs], apparently with the help of lawyers [Defendant] Riley and [Defendant] Crow." (Doc. # 10 at ¶ 58).

Plaintiffs have utterly failed to state a claim for conversion as it relates to the "almost $9,000" that Plaintiffs allege was "basically" stolen from them as a result of the foreclosure sale. Under Alabama law, a claim for conversion arises where there is "a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse of another's property." *Covington v. Exxon Co.,* 551 So.2d 935, 938 (Ala.1989) (citations omitted). Notably,

> [t]he Alabama Supreme Court has repeatedly held that an action for the conversion of money is improper unless there is earmarked money or specific money capable of identification…. Money is specific and capable of identification where, for example, it is 'money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered, and where there is an obligation to keep intact and deliver this specific money rather than to merely deliver a certain sum.'

*Edwards v. Prime, Inc.*, 602 F.3d 1276, 1303–04 (11th Cir. 2010) (citations omitted). Thus, under Alabama law a plaintiff must allege that a defendant converted specific money capable of identification, not merely that a defendant converted identifiable amounts of money. *Id.* at 1304. Plaintiffs' Amended Complaint alleges that Defendants converted a specific amount of money (*i.e.*, "about $9,000") but fails to plead any facts indicating that Defendants converted specific money capable of identification.

Further, Plaintiffs have failed to allege a claim for conversion of their personal property. "The elements of conversion include a wrongful taking of specific property and an assumption of ownership or dominion over the separate and identifiable property of another.... Further, the

plaintiff must have a right to immediate possession of such property and the taking must be in defiance of that right." *Young v. Norfolk Southern Ry.*, 705 So.2d 444, 446 (Ala. Civ. App. 1997).  Plaintiffs' Amended Complaint makes only the conclusory allegation that the named Defendants participated in a scheme to take Plaintiffs' personal property and that, following their move to Missouri, Plaintiffs "wound up losing almost all of their possessions – either during the move under traumatic conditions or during an unlawful eviction in Missouri."  (Doc. # 10 at ¶¶ 47, 51).

Such an assertion, standing alone, is not sufficient to support a claim for the conversion of personal property.  Similarly, Plaintiffs' lone remaining factual allegation, that their possessions were "lost" during their move or eviction in Missouri, provides no factual basis that any of the named Defendants wrongfully converted their personal property.

## VII.    Count Six (Tortious Interference)

Count Six of Plaintiffs' Amended Complaint asserts a claim for "tortious interference" under Alabama State law.  Plaintiffs bring their "tortious interference" claim against Defendants Garrison, Strange, Baxley, Duke, Crow, JPMorgan Chase Bank ("Chase"), Wermuth, Millirons, Spartan Value Investors, Mobley, Jackson, JAG Investment Strategies, James Williams, Lara Williams, Nowlin and Associates, Charles Nowlin, Craft, Preston Crider, Angela Crider, Odom, Riley, Birmingham Water Works, and Dillard.[7]

In support of their "tortious interference" claim, Plaintiffs incorporate paragraphs 1-60 of their Amended Complaint, and further allege that Plaintiffs had a "property interest in their home and its contents and a business relationship with their mortgage company."  (Doc. # 10 at ¶ 77). Plaintiffs further allege that "Defendants interfered with [Plaintiffs'] interests and relationships

---

[7]  Plaintiffs' Amended Complaint states that Count Six is asserted against "All Defendants, except Marie Claire, Liz Welch, Yellowhammer News, Cliff Sims, Alabama Media Group, [and] Leada Gore."  (Doc. # 10 at p. 13).

by causing a foreclosure to be launched for purposes that had nothing to do with collection of a debt" and instead was motivated by the desire to "bring an end to [Plaintiff] Roger Shuler's investigative journalism via *Legal Schnauzer*." (Doc. # 10 at ¶ 78).

The elements of a cause of action for tortious interference with a business relationship are: "(1) the existence of a protectible business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *White Sands Group, L.L.C. v. PRS II, LLC*, 32 So.3d 5, 14 (Ala. 2009).

As a preliminary matter, Plaintiff must state facts alleging that the named Defendants are strangers to the business relationship (*i.e*, Plaintiffs' relationship with Defendant Chase created by their mortgage). As such, Plaintiffs have failed to state a claim for "tortious interference" against Defendant Chase because they do not allege that Defendant Chase was a stranger to the business relationship.

Additionally, Plaintiffs' Amended Complaint fails to state a claim of "tortious interference" for which relief can be granted against the other named defendants. Plaintiffs' factual allegations largely relate to grievances Plaintiffs have with Defendants. (*See* Doc. # 10 at ¶ 34, 35, 42, 54, 57). Plaintiffs contend that "powerful political forces" cheated the Shulers out of their jobs and that Plaintiff Roger Shuler was arrested based on the articles he wrote on his blog. Beyond that, Plaintiffs list those Defendants who were likely to benefit from the foreclosure of their former home. Plaintiffs further allege -- in wholly conclusory fashion -- that the named Defendants knew about their business relationship with Defendant Chase and interfered with that relationship "by causing a foreclosure to be launched for purposes that had nothing to do with collection of a debt." (Doc. # 10 at ¶¶ 77, 78).

When all Plaintiffs' factual allegations are taken as true, they have pled no facts which in any way suggest that any Defendant except Defendant Chase instituted the foreclosure action against them, or was responsible for the decision to foreclose on their house.  Allegations that Defendant Chase instituted a foreclosure, and that other defendants stood to benefit from the foreclosure of Plaintiffs' former home, are simply insufficient to plead an intentional interference with a protected business relationship.  Further, the only additional facts Plaintiffs allege that could be interpreted to involve actual interference with the business relationship are that certain Defendants filed lawsuits in state court against Plaintiffs.  (*See* Doc. # 10 at ¶¶ 38, 39, 40, 53, 59).  But Plaintiffs' Amended Complaint does not provide any factual basis to suggest that the lawsuits were instituted to intentionally interfere with Plaintiff's business relationship with Defendant Chase.  Instead, Plaintiffs' Amended Complaint alleges that Defendants Riley and Duke and Defendant Garrison filed defamation actions against Plaintiffs[8] as a result of Plaintiff Roger Shuler's blogging.  (Doc. # 10 at ¶¶ 38, 39).

In their Responses to Motions to Dismiss, Plaintiffs contend that there is a "direct relationship between the filing of the… litigation and the foreclosure of [Plaintiffs'] home," and that Plaintiff Roger Shuler's incarceration stemming from the Defendant Riley suit "took away five months [Plaintiffs] could have been dealing with foreclosure issues."  (Doc. # 10 at p. 9).  While Plaintiffs have pled facts sufficient to suggest that the lawsuits initiated by Defendants Riley and Duke and Garrison (and the judgments entered against Plaintiffs in those cases) may have affected their ability to pay their mortgage, they have alleged no facts that plausibly establish that Defendants instituted those actions in order to intentionally interfere with Plaintiffs' business relationship with Defendant Chase. *White Sands Group, L.L.C.* 32 So.3d at

---

[8] Plaintiffs' allege that Defendants Riley and Duke filed a lawsuit against both Plaintiffs Roger Shuler and Carol Shuler, while Defendant Garrison filed a lawsuit against only Plaintiff Roger Shuler.  (Doc. # 10 at ¶¶ 38, 39).

14 (requiring intentional interference with a protectible business relationship in order to establish a cause of action for tortious interference with a business relationship).

## VIII.   Count Seven (Defamation)

Count Seven of Plaintiffs' Amended Complaint asserts a claim for defamation under Alabama State law.   (Doc. # 10 at p. 16).   Plaintiffs bring their defamation claim against Defendants Garrison, Baxley, Dillard, Marie Claire, Liz Welch, Yellowhammer News, Cliff Sims, Alabama Media Group, and Leada Gore.

In support of their defamation claim, Plaintiffs incorporate paragraphs 1-60 of their Amended Complaint, and further allege that the named defendants "caused false statements to be published about [Plaintiffs]."   (Doc. # 10 at ¶ 80).   Plaintiffs further allege that the named defendants "maliciously and willfully caused defamatory statements to be published about Plaintiffs" and that "Defendants acted with malice, knowing the statements in question were false."   (Doc. # 10 at ¶¶ 82, 83).   Specifically, according to Plaintiffs' Amended Complaint, Defendant Garrison was the subject of a story in *Marie Claire*, in which Plaintiffs claim she falsely (1) intimated that Plaintiff Roger Shuler was stalking her, (2) claimed Plaintiff Roger Shuler wrote that Defendant Strange was the father of her son, and (3) claimed there was a trial in her defamation case.   (Doc. # 10 at ¶ 60).   Plaintiffs further allege that Defendant Yellowhammer News ran Defendant Marie Claire's article verbatim.   (Doc. # 10 at ¶ 61). Plaintiffs conclude their allegations by stating that *AL.com*, through reporter Defendant Gore, "picked up" the *Marie Claire* article and repeated a number of Defendant Garrison's false statements.   (*Id.*).

Under Alabama law:

The elements of a cause of action for defamation are: 1) a false and defamatory statement concerning the plaintiff; 2) an unprivileged communication of that

statement to a third party; 3) fault amounting at least to negligence on the part of the defendant; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication of the statement."

*McCaig v. Talladega Publ'g Co.*, 544 So.2d 875, 877 (Ala. 1989).  Generally, courts "do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss."  *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007).  However, the court may consider a document not attached to a plaintiff's complaint when "a plaintiff refers to [that] document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss."  *Id*.  In this case, multiple defendants have attached the allegedly defamatory articles to their motions to dismiss.  (*See* Docs. # 132-6, 141-2, 141-3).  In their responsive briefs, Plaintiffs have not disputed the content or authenticity of the attached articles, and they even quoted relevant portions of one article in one set of their responses.  (*See* Doc. # 145 at ¶ 8).  They have made explicit reference to the articles in their Amended Complaint and the articles are central to Plaintiffs' defamation claim.  Accordingly, the court may consider the articles Plaintiffs contend are defamatory and which are attached to Defendants' motions to dismiss, as well as Plaintiffs' pleadings.[9]  Further, it is axiomatic that "court may also consider public documents, such as court orders, without converting a motion to dismiss in to a motion for summary judgment."  *Mesidor v. Waste Mgmt., Inc. of Fla.*, 606 F. App'x 934, 935 n.1 (11th Cir. 2015).  As such, the court may rely on the final judgment entered in the state court defamation action, as appropriate, in addition to Plaintiffs' Amended Complaint.

---

[9] The Eleventh Circuit has cited favorably to a First Circuit opinion for the proposition that a "magazine article referred to in the complaint and attached to the defendant's motion to dismiss was central to the plaintiffs' claim because '[p]laintiffs unquestionably would have had to offer a copy of the article in order to prove their case.'" *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1285 (11th Cir. 2007) (*citing Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir.1988)).

"In an action for libel or slander, the plaintiff must prove, unless it shall be admitted by the defendant, the facts showing that the alleged defamatory matter was published or spoken of the plaintiff."  Ala. Code § 6-5-182.  A plaintiff may not recover in a defamation action if she has not pled that a false statement was made specifically concerning her.  *See Larrimore v. Dubose*, 827 So.2d 60 (Ala. 2001) (finding that a wife did not have an action for defamation against a person who accused her husband of committing adultery).  Because Plaintiffs have not pled any facts suggesting that any defamatory statement was made about Plaintiff Carol Shuler, her claims for defamation are due to be dismissed.

The court will examine each of the statements Plaintiffs allege are defamatory with respect to Plaintiff Roger Shuler, in turn.  First, Plaintiffs allege that Defendant Garrison, in the *Marie Claire* article, "falsely intimate[d] that [Plaintiff Roger Shuler] was stalking her."  (Doc. # 10 at ¶ 60).  The relevant portion of the *Marie Claire* article reads as follows:

> Shuler posted photos of my home on his website, which felt like a threat, not to mention a huge violation of privacy.  Had he been at my house?  Was he stalking me?  I installed a home security system and put the police on notice.  I was so paranoid that I called the cops in tears one night, convinced someone was outside, and was relieved – and slightly mortified – to learn it was the police doing a drive by.

(Doc. # 132-6 at p. 2).

As mentioned above, a prerequisite to pleading a defamation claim is the publication of a false statement of fact.  Generally, a "false statement of fact," if couched as an opinion or rhetorical question, must "contain objectively verifiable facts or imply the existence of verifiable facts" before it may be termed an actionable statement of fact.  *Marshall v. Planz*, 13 F. Supp. 2d 1246, 1257 (M.D. Ala. 1998).  "A statement of fact is not shielded from an action for defamation by being prefaced with the words 'in my opinion,' but if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in

possession of objectively verifiable facts, the statement is not actionable." *Id*.  Defendant

Garrison's comments, as published in the *Marie Claire* article, did not suggest as a factual matter

that Plaintiff Roger Shuler was stalking her.  Instead, Defendant Garrison stated that Plaintiff

Roger Shuler had posted photos of her home, she installed a home security system, and she was

"slightly mortified" by a police drive by that she initially mistook for more nefarious conduct.

(Doc. # 132-6 at p. 2).  Plaintiffs have not alleged that any of these facts are false.  Instead, they

take issue with Defendant Garrison's rhetorical question, originally made in the *Marie Claire*

article, "[w]as he stalking me?" (*See* Doc. # 10 at ¶ 60).  This question is precisely the sort of

"conjecture or surmise" which is not an actionable "false statement," as a matter of law.  In

posing such a question, Defendant Garrison did no more than explain her thought process and

express a statement of possibility.  This alone is insufficient to plead a claim for defamation, and,

accordingly, Plaintiffs' contention that Defendant Garrison "falsely intimated" that Plaintiff

Roger Shuler stalked her does not serve as the basis for a defamation claim as a matter of law.

Plaintiffs' allegation that Defendant Garrison falsely claimed that Plaintiff Roger Shuler

wrote that Defendant Strange was the father of her son is similarly insufficient as a matter of law

to plead a claim of defamation.  Alabama law includes a statutory privilege that protects

publications containing fair and accurate reports of civil judicial proceedings:

> The publication of a fair and impartial report of … the filings of any affidavit,
> pleading or other document in any criminal or civil proceeding in any court, or of
> a fair and impartial report of the contents thereof… shall be privileged, unless it
> be proved that the same was published with actual malice.

Ala. Code § 13A-11-161.  Further, the publication of an otherwise defamatory matter "is

privileged if the report is accurate and complete *or a fair abridgment of the occurrence*

*reported*."  *Wilson v. Birmingham Post Co.*, 482 So. 2d 1209, 1211 (Ala. 1986) (emphasis

added).  Whether a defendant is entitled to this qualified privilege is determined as a matter of law.  *See Wiggins v. Mallard*, 905 So. 2d 776, 782 (Ala. 2004).

Based on their content, the allegedly defamatory articles constitute "reports of a judicial proceeding."[10]  While Plaintiffs contend that the privilege does not apply in this instance because the alleged defamatory statements were not quoted from a court document (*see* Doc. # 145 at pp. 3-4), there is no requirement that the report contain only quotations from court documents in order to be privileged.  Instead, the publication is privileged when it contains "a fair abridgment of the occurrence reported."  *Wilson*, 482 So.2d at 1211.  Accordingly, the court must next determine if the allegedly defamatory statement -- that Plaintiff Roger Shuler wrote that Defendant Garrison's son was actually Defendant Strange's illegitimate son -- was part of a fair report of the state court defamation proceedings.  In Defendant Garrison's state court defamation case against Plaintiff Roger Shuler, the court entered a Final Judgment which stated that the court had heard evidence that Plaintiff Roger Shuler, through his blog dubbed "Legal Schnauzer," made comments "that the Attorney General was the father of [Defendant Garrison's] minor son."  (Doc. # 132-3 at pp. 2-3).  The state court judgment, a matter of public record, clearly states that it heard evidence that Plaintiff Roger Shuler wrote that Defendant Garrison's son was actually Defendant Strange's illegitimate son, and considered that fact to be true.  Thus, the fact that Defendant Garrison repeated that finding in a publication relating the events of her state defamation case cannot serve as the basis for a defamation claim, as a matter of law.

---

[10] For example, the initial *Marie Claire* article explained in its title that it told the story of Defendant Garrison's $3.5 million suit against Plaintiff Roger Shuler.  (Doc. # 132-6 at p.2).  The articles further recounted various aspects of (1) Plaintiff Roger Shuler's service in the defamation case, (2) the preliminary hearing in the case, (3) the evidentiary hearing in the case, (4) and the outcome of the case.  (*See* Doc. # 132-6 at p. 3).

Having found that Defendant Garrison's statement that Roger Shuler wrote -- that her son was actually Defendant Strange's illegitimate son -- was a fair and accurate reporting of a finding made by the state court judge in the defamation case, Plaintiffs may only defeat this privilege if they plead "actual malice." A review of Plaintiffs' Amended Complaint demonstrates they have pled no factual basis whatsoever to support a finding of "actual malice."

Plaintiffs' responsive brief (Doc. # 145) attacks the legitimacy of the state court's defamation proceedings and argues that Defendant Garrison falsely stated that Roger Shuler wrote about the illegitimacy of her son to "'earn' most of her $3.5-million default judgment." (*See* Doc. # 145 at pp. 2, 3, 7).  While Plaintiffs have expressed their disapproval of the state court's conduct of the default hearing in Garrison's defamation action against them, and appear in this case to dispute the evidence put before the state in its evidentiary hearing, this action is not the proper means for Plaintiffs to seek redress for such accusations.[11]  Federal courts are courts of original, not appellate, jurisdiction, and lack subject-matter jurisdiction to reverse unfavorable state-court judgments.  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283 (2005).  If Plaintiffs disapprove of the evidence put forth in the state court's hearing, or object to the procedure used by the state court, it is their obligation to look to the state court for redress.  *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  If Plaintiffs dispute a finding made by a state court judge, their remedy lies in the state courts - not in suing those that repeat the evidence that was put before the state court.

---

[11] In one filing with the court, Plaintiffs also maintain that the published news articles could not be "fair and accurate reports" of judicial proceedings because "it was based totally on one party's word ([Defendant] Garrsion)." (Doc. # 145 at p. 4).  While Plaintiffs may have wished to have their say and refute the evidence offered at the state court default judgment hearing, the fact that they failed to attend the default hearing makes the report of the evidence offered at the hearing no less fair or accurate.  Again, if Plaintiffs allege that their state court default hearing was improperly noticed, their remedy lies in the state court.

Finally, Plaintiffs' contention that Defendant Garrison, and those who published her story, "falsely claimed there was a trial in the defamation case" is not sufficient to plead a defamation claim.   After stating that Defendant Garrison initiated a lawsuit against Plaintiff Roger Shuler, the initial *Marie Claire* article reads as follows:

> When the trial came, Shuler didn't show up.  (After five months, he'd gotten out of jail – his wife unpublished the posts about Riley.)   Both Luther and I were called to the stand….

> One day about a month later, I was running late for a meeting with a close colleague when my lawyer called with the news: Not only had I won my case, but the judge had awarded me $3.5 million in damages.

(Doc. # 132-6 at p. 3).  The final judgment entered in the state court case confirms that the court held a hearing and heard testimony and received documents into evidence.  (Doc. # 132-3 at p. 2).  The state court judgment further reflects an award of $3.5 million, with costs taxed to the defendants (Roger Shuler and his Legal Schnauzer blog).  *Id.*

Plaintiffs' Amended Complaint does not dispute these above "facts;" rather, Plaintiffs claim only that they have been defamed because the evidentiary hearing in the state declaratory judgment action was mislabeled in the articles, and was characterized as a "trial," rather than a hearing.   "The common law of libel… overlooks minor inaccuracies and concentrates upon substantial truth."  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991).  Accordingly, minor inaccuracies do not amount to falsity so long as the "gist" or "sting" of the libelous charge can be justified.  *Id*; *see also Drill Parts and Serv. Co. v. Joy Mfg. Co.*, 619 So.2d 1280, 1290 (Ala. 1993) (finding no defamation in a case where allegedly defamatory publication was "substantially correct.").  In this case, the alleged mislabeling of the declaratory judgment evidentiary hearing as a trial is, at most, a "minor inaccuracy," and does not rise to the level of

actionable defamation.[12]  Again, Plaintiffs do not allege that the articles at issue misrepresent the evidence presented to the state court, nor do they allege any inaccuracy in the reporting of the judgment that was entered against Roger Shuler.  Instead, they allege that the news articles fail to properly label the procedural vehicle by which the state court granted judgment against Roger Shuler.  Such an allegation does not plausibly plead a claim for defamation, and is due to be dismissed.

Because none of the statements mentioned in Plaintiffs' Amended Complaint plausibly plead a claim for defamation, Plaintiffs' defamation claim against Defendants Garrison, Baxley, Dillard, Marie Claire, and Welch is due to be dismissed.  Further, because the alleged statements do not constitute actionable defamation, Plaintiffs' claims based on the republication of those statements are without merit, and Plaintiffs' defamation claim against Defendants Yellowhammer News, Sims, Alabama Media Group, and Gore is due to be dismissed.

## IX.   Count Eight (Invasion of Privacy)

Count Eight of Plaintiffs' Amended Complaint asserts a claim for invasion of privacy under Alabama State law.  Plaintiffs bring their invasion of privacy claim against Defendants Garrison, Strange, Baxley, Duke, Crow, JPMorgan Chase Bank ("Chase"), Wermuth, Millirons, Spartan Value Investors, Mobley, Jackson, JAG Investment Strategies, James Williams, Lara Williams, Nowlin and Associates, Charles Nowlin, Craft, Preston Crider, Angela Crider, Odom,

---

[12]  *Merriam-Webster* defines a trial as "the action or process of trying or putting to the proof," or, alternatively, "the formal examination before a competent tribunal of the matter in issue in a civil or criminal cause in order to determine such issue."   "Trial," Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/trial (last visited Jan. 13, 2017).  As such, the articles' reporting that a trial occurred can hardly be described as an inaccuracy at all.  The public record clearly indicates that the state court judge heard evidence and made evidentiary findings in ordering the default judgment. (Doc. # 132-3).  Accordingly, proof was put on in the state court matter, and the judge conducted a formal examination in determining the issue.

Riley, Birmingham Water Works, and Dillard.[13]  In support of their "tortious interference" claim, Plaintiffs incorporate paragraphs 1-60 of their Amended Complaint, and further allege that the named defendants "caused numerous intrusions on the Shulers' physical solitude or seclusion." (Doc. # 10 at ¶ 84).  Plaintiffs further contend that "[t]hese actions constitute invasion of privacy under Alabama state law and caused the Shulers to suffer physical, emotional, and financial damages."  (Doc. # 10 at ¶ 85).  Plaintiffs also allege that "[t]hese actions caused a nearly constant stream of strangers to come on the Shulers' property, banging on the door, shining lights in the windows.  The Shulers felt like prisoners in their own home."  (Doc. # 10 at ¶ 86).

> The tort of invasion of privacy consists of four limited and distinct wrongs: (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use.

*Martin v. Patterson*, 975 So. 2d 984, 992 (Ala. Civ. App. 2007) (internal citations omitted). Plaintiffs' Amended Complaint alleges a violation of the first wrong: intruding into the plaintiffs' physical solitude or seclusion.  However, Plaintiffs' Amended Complaint fails to allege any conduct, by any defendant, sufficient to plausibly plead such an invasion of privacy.

 A defendant is subject to liability for invasion of privacy "when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs."  *Martin*, 975 So.2d at 993. (*citing* Restatement (Second) of Torts § 652B (1997)).  While the tort of invasion of privacy requires a plaintiff plead that a defendant actually intruded into a private place, here, Plaintiffs plead only (in conclusory fashion) that Defendants

---

[13] Plaintiff's Amended Complaint states that Count Eight is asserted against "All Defendants, except Marie Claire, Liz Welch, Yellowhammer News, Cliff Sims, Alabama Media Group, [and] Leada Gore."  (Doc. # 10 at p. 17).

caused others to intrude on their physical solitude and seclusion.  This is simply insufficient to plausibly plead a claim for invasion of privacy.

In paragraphs 1-60 of their Amended Complaint, Plaintiffs plead various facts detailing the foreclosure of their house, and the relationship that foreclosure has to the judgments entered against them in prior state court actions.  Again, rather than adequately allege that some defect existed in the foreclosure proceeding or that Defendants actually intruded into their physical solitude, Plaintiffs seek redress by relying upon a variety of legal theories that simply do not apply here.  Neither filing a lawsuit nor foreclosing on a mortgage (nor buying a home or any of the other conduct alleged in Plaintiffs' Amended Complaint, for that matter) serves as a basis for an invasion of privacy claim.  Thus, even when taken as true, the allegations that certain defendants foreclosed on Plaintiffs' former house, presumably causing strangers to intrude on their solitude, are not sufficient to plead a claim for invasion of privacy, because they do not allege any action by the named defendants themselves that invaded Plaintiffs' privacy.

## X.    Count Nine (Intentional Infliction of Emotional Distress)

Count Nine of Plaintiffs' Amended Complaint asserts a claim for intentional infliction of emotional distress under Alabama State law.  Plaintiffs bring this claim against Defendants Garrison, Strange, Baxley, Duke, Crow, JPMorgan Chase Bank ("Chase"), Wermuth, Millirons, Spartan Value Investors, Mobley, Jackson, JAG Investment Strategies, James Williams, Lara Williams, Nowlin and Associates, Charles Nowlin, Craft, Preston Crider, Angela Crider, Odom, Riley, Birmingham Water Works, and Dillard.[14]

In support of their intentional infliction of emotional distress claim, Plaintiffs incorporate paragraphs 1-60 of their Amended Complaint.  (Doc. # 10 at ¶ 87).  Further, Plaintiffs allege that

---

[14]  Plaintiff's Amended Complaint states that Count Nine is asserted against "All Defendants, except Marie Claire, Liz Welch, Yellowhammer News, Cliff Sims, Alabama Media Group, [and] Leada Gore."  (Doc. # 10 at p. 17).

"[t]he above-named defendants' conduct was intentional and reckless and caused both Roger and Carol Shuler extraordinary distress, to the point that they no longer feel safe inside their own home or when they simply are running errands in their vehicle."  (*Id.*).

The elements of the tort of intentional infliction of emotional distress, which was at first nominated as the tort of outrage, are that (1) the defendant's conduct was intentional or reckless, (2) the conduct was extreme and outrageous, and (3) the conduct caused emotional distress so severe that no reasonable person could be expected to endure it.  *Ex parte Crawford & Co.*, 693 So. 2d 458, 460 (Ala. 1997).  The Alabama Supreme Court in *Potts v. Hayes*, 771 So.2d 462 (Ala. 2000) stated that it has recognized the tort of outrage "in regard to only three kinds of conduct: (1) wrongful conduct in family-burial context; (2) barbaric methods employed to coerce an insurance settlement; and (3) egregious sexual harassment."  *Potts*, 771 So.2d at 465 (internal citations omitted).  These three kinds of categories are not necessarily the only sufficient type of conduct that could plausibly plead intentional infliction of emotional distress[15], however, and the guiding inquiry is ultimately whether a plaintiff has alleged facts "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  *American Road Serv. Co. v. Inmon*, 394 So.2d 361, 365 (Ala. 1981).  Whether a claim presents the requisite level of outrageousness to sustain a claim for intentional infliction of emotional distress is a matter of law.  *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1258 (11th Cir. 2016).

Even when taken as true, none of the facts alleged by Plaintiffs plausibly plead a cause of action for intentional infliction of emotional distress.  The court has carefully reviewed the facts

---

[15]  In *O'Rear v. B.H.*, 69 So.3d 106 (Ala. 2011), the Alabama Supreme Court "affirmed a judgment on a tort-of-outrage claim asserted against a family physician who, when asked by a teenage boy's mother to counsel the boy concerning his stress over his parents' divorce, instead began exchanging addictive prescription drugs for homosexual sex for a number of years, resulting in the boy's drug addiction."  *Little v. Robinson*, 72 So. 3d 1168, 1172-73 (Ala. 2011).

alleged by Plaintiffs, but simply cannot find any factual allegation that raises a cognizable claim for intentional infliction of emotional distress. The act of filing a lawsuit cannot be deemed as the intentional infliction of emotional distress.[16] Similarly, allegations of a "wrongful foreclosure" do not plead conduct "so outrageous in character and so extreme in degree as to go beyond all bounds of decency."[17] Finally, the court notes again that conclusory statements alone are not sufficient to defeat a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, Plaintiffs' conclusory claims that Defendants' conduct was "intentional" and caused them "extraordinary emotional distress" are not sufficient to survive Defendants' motions to dismiss.

## XI.    Count Ten (Civil Conspiracy)

Count Ten of Plaintiffs' Amended Complaint asserts a claim for civil conspiracy. Plaintiffs bring their civil conspiracy claim against Defendants Garrison, Strange, Baxley, Duke, Crow, JPMorgan Chase Bank ("Chase"), Wermuth, Millirons, Spartan Value Investors, Mobley, Jackson, JAG Investment Strategies, James Williams, Lara Williams, Nowlin and Associates,

---

[16]  Plaintiffs have not presented, and the court can not find, any Alabama caselaw for the proposition that filing a lawsuit, even with alleged ulterior motives, amounts to intentional infliction of emotional distress. To the contrary, courts in other jurisdictions have held that filing a lawsuit, even where the suit contains false accusations and dishonesty, does not give rise to a cognizable claim for intentional infliction of emotional distress. *See Georgia Power Co. v. Johnson*, 274 S.E.2d 17 (1980).

[17]  Plaintiffs have not presented, and the court is unable to locate, any Alabama case law for the proposition that foreclosure related conduct alleged by Plaintiffs amounts to intentional infliction of emotional distress. To the contrary, cases from other jurisdictions support the premise that a wrongful foreclosure in breach of the loan agreement fails to support a claim for intentional infliction of emotional distress. *Wieler v. United Sav. Ass'n of Texas, FSB*, 887 S.W.2d 155 (Tex. App. Texarkana 1994); *East River Sav. Bank v. Steele*, 169 Ga. App. 9, 311 S.E.2d 189 (1983)

Charles Nowlin, Craft, Preston Crider, Angela Crider, Odom, Riley, Birmingham Water Works, and Dillard.[18]

In support of their intentional infliction of emotional distress claim, Plaintiffs again incorporate paragraphs 1-60 of their Amended Complaint. (Doc. # 10 at ¶ 88). Further, Plaintiffs contend that "[t]he above-named defendants, and possibly others, reached an agreement to accomplish an unlawful purpose, to punish Roger Shuler for practicing journalism and Carol Shuler for being married to a journalist, by causing the Shulers' home to go through an unlawful foreclosure." (*Id.*). Civil conspiracy requires "a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means." *Camp v. Corr. Med. Servs., Inc*, 668 F. Supp. 2d 1338, 1367 (M.D. Ala. 2009), aff'd in part sub nom. *Camp v. Corr. Med. Servs.*, Inc., 400 F. App'x 519 (11th Cir. 2010) (internal citations omitted). Importantly, absent some underlying wrong, there can be no conspiracy. *Camp*, 668 F. Supp. 2d at 1367; *See also Allied Supply Co. v. Brown*, 585 So. 2d 33, 36 (Ala. 1991) ("A conspiracy itself furnishes no cause of action. The gist of the action is not the conspiracy but the underlying wrong that was allegedly committed…. If the underlying cause of action is not viable, the conspiracy claim must also fail.").

Plaintiffs, in their Amended Complaint, fail to plead an underlying wrong sufficient to furnish a cause of action for civil conspiracy. As detailed above, Plaintiffs' Amended Complaint fails to state a claim on any of the other nine counts contained in that pleading. Accordingly, Plaintiffs have failed to sufficiently plead a conspiracy to commit any of wrongs that form the basis of the other counts in this action. Further, Plaintiffs' have not adequately pled concerted action by any of the defendants. Neither Plaintiffs' speculation that certain defendants may have

---

[18] Plaintiff's Amended Complaint states that Count Ten is asserted against "All Defendants, except Marie Claire, Liz Welch, Yellowhammer News, Cliff Sims, Alabama Media Group, [and] Leada Gore." (Doc. # 10 at p. 18).

conspired with each other, nor Plaintiffs' conclusory allegation that defendants "reached an agreement to accomplish an unlawful purpose" are sufficient, absent supporting facts, to plead a right to relief for civil conspiracy.

## XII.  Any Opportunity to Amend the Pleadings Extended to Plaintiffs Would be Futile

"Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district judge dismisses the action with prejudice." *Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014) (citing *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir.1991)).  Here, the court is addressing Plaintiffs' Amended Complaint.  And "[w]hile a *pro se* litigant generally must be given at least one opportunity to amend his complaint, a district judge need not allow an amendment where amendment would be futile."  *Id.* (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir.2007) (per curiam)).  This case is one of the rare few in which any further amendment of Plaintiffs' complaint would be futile, and accordingly is due to be dismissed without leave to further amend.  *See Cockrell v. Sparks*, 510 F.3d at 1310 ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant.").

Plaintiffs have already amended their complaint once in this action.[19]  Having reviewed the claims made by Plaintiffs, the court finds that any additional attempt to amend the complaint would be futile.  Plaintiffs' Amended Complaint does not fail to state a claim because it is was pled inartfully.  To the contrary, Plaintiffs have presented twenty pages of allegations and sought to allege a grand scheme between twenty-nine separate persons and entities.  Plaintiffs are

---

[19]  Plaintiffs filed their initial complaint on April 29, 2016 (Doc. # 1) and subsequently filed their amended complaint on July 8, 2016 (Doc. #10).

notoriously litigious in the Northern District of Alabama.[20]  The court mentions this not to because it holds Plaintiffs to a higher pleading standard than any other *pro se* litigant or to express any prejudice against Plaintiffs.  Instead, the court merely notes that Plaintiffs have tried in at least one other case to bring similar claims against a number of the same defendants, arising out of a similarly alleged factual scenario.[21]  Ultimately, no matter how many times Plaintiffs' complaint is amended or re-packaged, it is clear that they are unable to assert a right to relief based on an attempt to change (or condemn as unlawful) the results of state court foreclosure proceedings or other judgments of the state courts.  *See District of Columbia Court of Appeals*, 460 U.S. 462.  And having considered the allegedly defamatory articles attached to Defendants' motions to dismiss, the court determines that amendment of Plaintiffs' defamation claim would similarly be futile.  Finally, the court finds that it would be futile to allow any further amendment of Plaintiffs' remaining tort claims based on the foreclosure of their former home.  Having reviewed the claims alleged by Plaintiffs, the court finds that it would be futile to allow Plaintiffs continued bites at the apple of re-pleading given the nature of the facts they allege and the relief they seek as a result.[22]

---

[20]  For example, the following cases have been filed in the Northern District of Alabama by one or both Plaintiffs proceeding *pro se*: *Shuler v. Ingram & Assocs.*, No. 2:08-cv-01238-AKK (N.D. Ala. 2008); *Shuler v. Swatek*, No. 2:10-cv-01215-AKK (N.D. Ala. 2010); *Shuler v. Bd. of Trustees of the Univ. of Ala.*, No. 2:10-cv-1271-WMA (N.D. Ala. 2010); *Shuler v. Infinity Prop. & Cas.*, No. 2:11-cv-3443-LSC (N.D. Ala. 2011); *Shuler v. Liberty Duke*, 2:16-cv-501-RDP (N.D. Ala. 2016).

[21]  In *Shuler v. Liberty Duke*, 2:16-cv-501-RDP (N.D. Ala. 2016) (dismissed without prejudice for failure to prosecute), Plaintiffs asserted thirteen claims for relief based on Roger Shuler's arrest, directed at those alleged to have conspired against him (including a number of defendants named in this action).

[22]  Because Plaintiffs are proceeding *in forma pauperis*, the court is further required to screen Plaintiffs' Amended Complaint and dismiss it, or any portion thereof, if it (1) is frivolous or malicious; (2) fails to state a claim for which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2).  Having found that Plaintiffs' Amended Complaint fails to state a claim for which relief may be granted, Plaintiffs' Amended Complaint is further due to be dismissed pursuant to 28 U.S.C. § 1915(e)(2).

**XIII.  Conclusion**

For the reasons stated above, Defendants' motions to dismiss (Docs. # 11, 18, 19, 21, 22, 27, 28, 29, 30, 38, 39, 41, 54, 75, 77, 78, 79, 80, 84, 88, 132, 141, 146) are hereby granted.  The court will enter an order contemporaneously herewith granting Defendants' motions.

**DONE** and **ORDERED** this January 13, 2017.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE